[No. S172589. Oct. 18, 2010.]

DANIEL LOPEZ, Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Doreen B. Boxer, Public Defender, Pamela P. King and Lyly Brantley, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Michael A. Ramos, District Attorney, Grover D. Merritt, Lead Deputy District Attorney, and Grace B. Parsons, Deputy District Attorney, for Real Party in Interest.

## OPINION

**MORENO, J.**—Penal Code[1] section 2962 of the Mentally Disordered Offender (MDO) Act provides that individuals convicted of certain enumerated violent offenses caused or aggravated by a severe mental disorder, and who pose a substantial threat of harm to others, may be required to receive mental health treatment as a condition of parole. An MDO may challenge whether he or she "meets the criteria in Section 2962." (§ 2966, subd. (a).) If parole is extended, the MDO may challenge his or her continued commitment by alleging that he or she no longer suffers from a severe mental disorder that is not in remission, or no longer poses a risk of substantial harm. (§ 2966, subd. (c).) Once parole is terminated, if an MDO's mental disorder is not in remission and the individual represents a substantial danger of physical harm to others, the district attorney can petition to extend involuntary treatment for one year. (§ 2970.)

Daniel Lopez pled guilty to carrying a concealed dirk or dagger in violation of section 12020, subdivision (a)(4) and was placed on parole with the condition that he receive inpatient mental health treatment as an MDO under section 2962. Prior to the termination of his parole, the district attorney

---

[1] Further undesignated statutory references are to the Penal Code.

filed a petition under section 2970 to extend Lopez's involuntary treatment. Lopez moved to dismiss the extension petition on the grounds that his initial treatment was improper because his conviction for carrying a concealed dirk or dagger was not one of the offenses enumerated in section 2962. The trial court denied the motion to dismiss and, on Lopez's petition for mandate, the Court of Appeal affirmed, holding that Lopez's "challenge to his original certification as an MDO [was] untimely."

For the reasons that follow, we conclude Lopez could not properly challenge whether he committed an enumerated offense justifying his initial MDO commitment after the first year of that commitment.

## Background

On December 26, 2002, Lopez approached a patron at a laundromat and demanded the patron's loose change. The patron told Lopez he had no change and demanded that Lopez "leave him alone"; Lopez continued to badger the patron. The patron repeated that he had no change for Lopez and entered the laundromat to do his laundry. The patron later left the laundromat to get the remaining laundry and some detergent from his car. Lopez stopped the patron in the parking lot, approached him "in a more threatening manner . . . and demanded that he give him any money that he had in his pocket." Lopez said, "Give me your f[***]ing money. I know you have money. Give me your chump change." The patron did not give Lopez any money and moved past him to enter the laundromat.

The patron once more left the laundromat to get additional items from his car, and also grabbed his steering wheel locking device, "The Club,"[2] to take back with him into the laundromat for protection. A few minutes later, Lopez approached the patron from behind, crouched into a "fighting stance" six inches from the patron's face, and said, "Give me all your money. I know you have money. Give me whatever money you have." The patron observed Lopez reaching into his front pocket, and the patron hit Lopez with The Club, injuring him.

Lopez ran away, and the patron followed him briefly while another person called 911. The caller advised police that Lopez did not have any weapons. Lopez returned to the phone booth near the laundromat, and was found there

---

[2] "The Club" is an antitheft steering wheel locking device designed by James E. Winner, Jr., and manufactured by Winner International, Inc. (<http://www.winnerinternational.com/ legacy.htm> [as of Oct. 18, 2010]). It is approximately 22-inches long, and is made of "cro-moly" steel, which "resists sawing, prying, hammering and freon attacks." (Winner Internat. Online store, The Original Club description, <http://store.winner-intl.com/the-original-club-p2.aspx> [as of Oct. 18, 2010].)

several minutes later by the responding police officers. Officers approached Lopez with guns drawn, asked him if he had any weapons, and Lopez told them he had a knife in his pocket.

Police questioned Lopez at the scene. After waiving his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602], Lopez admitted that he had consumed four 40-ounce bottles of beer in the three and one-half hours preceding the altercation at the laundromat. Lopez told officers that the patron's "mere presence was offensive to him" and that the patron had invaded his space and privacy. Lopez explained that "he was a very spiritual person, and he could read thoughts and could get into [the patron's] mind, and he knew that [the patron] was just invading his privacy." Lopez told police that although he had a knife in his pocket, he did not brandish the weapon during his exchange with the patron. Police seized the knife following a patdown.

On December 30, 2002, Lopez was charged with attempted second degree robbery in violation of sections 664 and 211, and with carrying a concealed dirk or dagger in violation of section 12020, subdivision (a)(4). On April 6, 2004, Lopez pleaded guilty to carrying a concealed dirk or dagger and the attempted second degree robbery charge was dismissed.

Lopez was sentenced to 16 months in prison but was released directly to parole based upon the time he had already served and the credit he received for his work and good behavior while incarcerated. One month later, Lopez was returned to custody after violating parole, and then released again. Two months later he again violated parole, was returned to custody, and released a third time. This sequence recurred, and on his fourth return to custody he served 12 months and was again released in September 2005.

As a condition of release, Lopez was required to receive treatment from the State Department of Mental Health pursuant to section 2962.[3] One month following this, on October 26, 2005, Lopez requested and received a certification hearing at which he was deemed to be an MDO by the Board of Parole

---

[3] Section 2962 requires, as a condition of parole, that the State Department of Mental Health provide mental health treatment to those prisoners who meet the following criteria: The prisoner must (1) have "a severe mental disorder," (2) "that is not in remission or cannot be kept in remission without treatment," (3) "[t]he severe mental disorder [must have been] one of the causes of or . . . an aggravating factor in the commission of a crime for which the prisoner was sentenced to prison," (4) "[t]he prisoner [must have] been in treatment for the severe mental disorder for 90 days or more within the year prior to the prisoner's parole or release," (5) there must be an evaluation by enumerated mental health professionals that the prisoner satisfies the first three factors, and that the prisoner's mental disorder "represents a substantial danger of physical harm to others," and (6) the prisoner's conviction must be for a crime enumerated in subdivision (e).

Hearings (BPH).[4] Lopez and his counsel were present at the certification hearing. In January 2006, three months after his certification hearing, Lopez filed a petition pursuant to section 2966, subdivision (b),[5] requesting a hearing to determine whether he met the section 2962 criteria. One month later, Lopez withdrew his section 2966 petition, by his own designation, "[without] prejudice." Lopez did not file another section 2966 petition, and his inpatient MDO commitment was continued at his annual review hearing in October 2006, one year after the date of his certification hearing.

On June 18, 2007, eight months after the annual review hearing, the People filed a petition to extend Lopez's commitment pursuant to section 2970[6] for another year.[7] Lopez filed an amended motion to dismiss the section 2970 commitment extension petition on grounds of insufficient evidence. Specifically, Lopez contended that "the commitment offense for which [he] received a determinate sentence [was not] an enumerated offense pursuant to" section 2962, subdivision (e),[8] and lacking this foundational criterion, continued commitment was improper.

---

[4] As the Court of Appeal noted, "Effective July 1, 2005, the former Board of Prison Terms was abolished, and all statutory references to the Board of Prison Terms was deemed to be a reference to the Board of Parole Hearings. (§ 5075, subd. (a).) We adopt the new designation, although the record in this case continues to refer to the former."

[5] Section 2966 provides in pertinent part, "A prisoner who disagrees with the determination of the [BPH] that he or she meets the criteria of Section 2962, may file . . . a petition for a hearing on whether he or she, as of the date of the [BPH] hearing, met the criteria of Section 2962." (§ 2966, subd. (b).) Section 2966 does not set forth any timing requirements regarding when such a petition must be filed, and explains only that "a hearing on the petition [shall be conducted] within 60 calendar days after the petition is filed, unless either time is waived by the petitioner or his or her counsel, or good cause is shown." (§ 2966, subd. (b).)

[6] In pertinent part, section 2970 provides that "prior to the termination of parole, . . . if the prisoner's severe mental disorder is not in remission or cannot be kept in remission without treatment, . . . [a qualified professional] shall submit to the district attorney . . . his or her written evaluation on remission. . . . [¶] The district attorney may then file a petition with the superior court for continued involuntary treatment for one year." The petition must be accompanied by affidavits indicating that the individual had been continuously provided treatment, that he or she "has a severe mental disorder, that . . . is not in remission or cannot be kept in remission . . . and that . . . the [individual] represents a substantial danger of physical harm to others."

[7] This petition marks the People's first request in this case for a hearing pursuant to section 2970. The prior proceedings were held pursuant to section 2962, which defines the criteria that must be satisfied when a prisoner as a condition of parole must be treated by the State Department of Mental Health, as previously described, and pursuant to section 3001, which sets forth the criteria concerning discharge from parole, and excepts from discharge those individuals eligible for retention based upon a "Department of Corrections recommend[ation] to the [BPH], for good cause." (§ 3001, subd. (a).)

[8] Section 2962, subdivision (e) provides, in pertinent part, that the defendant must have received a determinate sentence for the underlying crime committed, and that the crime must be among the list of enumerated offenses. This list includes a number of specifically delineated violent crimes, as well as a "catch-all" provision stating that the crime may be one "in which

The court denied Lopez's motion to dismiss, concluding that because Lopez had filed a petition pursuant to section 2966 and later withdrew that petition, he was precluded from raising issues that he could have, but did not, litigate via that petition. Lopez filed a petition in the Court of Appeal seeking a writ of mandate directing the trial court to vacate its order denying his motion to dismiss, and to instead address the merits of his motion.

In a published opinion, the Court of Appeal denied Lopez's petition, concluding that Lopez's "challenge to his original certification as an MDO [was] untimely." The Court of Appeal declined to address preclusion, instead concluding that "[t]he static factors [of an MDO commitment, including whether the original offense was qualifying pursuant to section 2962, subdivision (e),] may not be challenged after [the] original commitment has expired." The court concluded that Lopez forfeited his right to challenge the "static criteria" of commitment—namely, whether "(1) the disorder caused or aggravated the commission of the predicate crime," (2) whether the offender received a minimum 90-day treatment prior to parole or release, and (3) whether "the crime is described in section 2962, subdivision (e)"—by waiting until after the first year of commitment had passed. Accordingly, it denied Lopez's request for writ relief. We granted review to resolve whether the Court of Appeal correctly concluded that the static factors of MDO commitment must be litigated during the initial one-year commitment period.

## DISCUSSION

"The Mentally Disordered Offender Act (MDO Act), enacted in 1985, requires that offenders who have been convicted of violent crimes related to their mental disorders, and who continue to pose a danger to society, receive mental health treatment . . . until their mental disorder can be kept in remission. (Pen. Code, § 2960 et seq.)" (*In re Qawi* (2004) 32 Cal.4th 1, 9 [7 Cal.Rptr.3d 780, 81 P.3d 224].) The MDO Act is not penal or punitive, but is instead designed to "protect the public" from offenders with severe mental illness and "provide mental health treatment until the severe mental disorder which was one of the causes of or was an aggravating factor in the person's prior criminal behavior is in remission and can be kept in remission." (§ 2960.) The MDO Act has the dual purpose of protecting the public while treating severely mentally ill offenders. (*Ibid.*)

■ The MDO Act provides for treatment of certified MDO's at three stages of commitment: as a condition of parole, in conjunction with the extension of parole, and following release from parole. Section 2962 governs

the perpetrator expressly or impliedly threatened another with the use of force or violence likely to produce substantial physical harm in such a manner that a reasonable person would believe and expect that the force or violence would be used." (§ 2962, subd. (e)(2)(Q).)

the first of the three commitment phases, setting forth the six criteria necessary to establish MDO status; these criteria must be present at the time of the State Department of Mental Health's and Department of Correction and Rehabilitation's determination that an offender, as a condition of parole, must be treated by the State Department of Mental Health. The first three criteria outlined in section 2962 are capable of change over time, and must be established at each annual review of the commitment. (§§ 2962, subd. (a), 2966, subd. (c), 2970, 2972.) These criteria require proof that an offender suffers from a severe mental disorder, that the illness is not or cannot be kept in remission, and that the offender poses a risk of danger to others. (§ 2962, subd. (a).) The latter three criteria outlined in section 2962—that the offender's severe mental disorder was a cause or aggravating factor in the commission of the underlying crime, that the offender was treated for at least 90 days preceding his or her release, and that the underlying crime was a violent crime as enumerated in section 2962, subdivision (e)—are considered "static" or "foundational" factors in that they "concern past events that once established, are incapable of change." (*People v. Francis* (2002) 98 Cal.App.4th 873, 879 [120 Cal.Rptr.2d 90]; see also *People v. Cobb* (2010) 48 Cal.4th 243, 251–252 [106 Cal.Rptr.3d 230, 226 P.3d 340].)

Challenges to the first phase of commitment are governed by sections 2964 and 2966, subdivisions (a) and (b). Section 2964 provides in pertinent part that "[a]ny prisoner who is to be required to accept treatment pursuant to [s]ection 2962 shall be informed in writing of his or her right to request a hearing pursuant to [s]ection 2966." Section 2966, subdivisions (a) and (b), set forth the procedure an MDO may utilize to challenge the propriety of his or her initial commitment. Should an individual disagree with an MDO certification decision, he or she may request a hearing before the BPH, and may request that independent mental health professionals evaluate the offender. (§ 2966, subd. (a).) If "[a] prisoner . . . disagrees with the determination of the [BPH] that he or she meets the criteria of [s]ection 2962, [he or she] may file . . . a petition for a hearing on whether he or she, as of the date of the [BPH] hearing, met the criteria of [s]ection 2962." (§ 2966, subd. (b).) At this civil hearing in the superior court, the offender will have the right to be represented by counsel and the right to a jury trial. (*Ibid.*)

Section 2966, subdivision (c) governs the second commitment phase. It provides that if an individual's parole is continued beyond one year pursuant to section 3001, and that individual's treatment is also continued pursuant to section 2962, the individual may utilize the procedures outlined in section 2966 (a hearing before the BPH, or a court proceeding) *only* challenge the dynamic commitment criteria—namely, that the individual suffers from a severe mental disorder that is not in remission, and that he or she poses a

substantial risk of danger. (§ 2966, subd. (c).) If the offender's "mental disorder is put into remission during the parole period," treatment must cease. (§ 2968.)

Sections 2970 and 2972 govern the third and final commitment phase, once parole is terminated. If continued treatment is sought, the district attorney must file a petition in the superior court alleging that the individual suffers from a severe mental disorder that is not in remission, and that he or she poses a substantial risk of harm. (§ 2970.) Commitment as an MDO is not indefinite; instead, "[a]n MDO is committed for . . . one-year period[s] and thereafter has the right to be released unless the People prove beyond a reasonable doubt that he or she should be recommitted for another year." (*People v. McKee* (2010) 47 Cal.4th 1172, 1202 [104 Cal.Rptr.3d 427, 223 P.3d 566].)

We examine here whether an MDO must challenge the static criteria justifying commitment during the initial one-year period of that commitment, or whether such a challenge may be brought at any time, even decades after the initial commitment has ended. When engaging in statutory construction, "[w]e begin with the statutory language because it is generally the most reliable indication of legislative intent. [Citation.] If the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls. (*People v. Hudson* (2006) 38 Cal.4th 1002, 1009 [44 Cal.Rptr.3d 632, 136 P.3d 168].)" (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 211 [64 Cal.Rptr.3d 210, 164 P.3d 630].) If the language is susceptible of multiple interpretations, "the court looks 'to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1008 [239 Cal.Rptr. 656, 741 P.2d 154].) After considering these extrinsic aids, we 'must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' (*People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224].)" (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977–978 [90 Cal.Rptr.2d 260, 987 P.2d 727].)

Section 2966, subdivision (b) permits an individual dissatisfied with the BPH's determination that he or she meets the criteria specified in section 2962 to "file in the superior court of the county in which he or she is incarcerated or is being treated a petition for a hearing on whether he or she, as of the date of the [BPH] hearing, met the criteria of [s]ection 2962." The statute is silent concerning the time by which such a petition must be filed. Lopez argues that

the absence of an express limitations period suggests that the petition may be filed at any time; the People suggest a contrary conclusion, explaining that section 2966, subdivision (b) is limited to challenges brought during the initial one-year commitment period, while section 2966, subdivision (c) and section 2972 govern challenges to MDO commitment continued beyond that initial year. Both the People's and Lopez's interpretations are reasonable.

Because the statutory language is susceptible of multiple interpretations, we examine the statutory scheme as a whole to ascertain whether the intent of the Legislature may be discerned by examining the statute in its larger context. (See *Nunn v. State of California* (1984) 35 Cal.3d 616, 624, 625 [200 Cal.Rptr. 440, 677 P.2d 846].) This review reveals the Legislature's intent that the static commitment criteria must be challenged during an MDO's initial one-year commitment period. Section 2962, subdivision (d) explains that, to be certified as an MDO, "the person in charge of treating the prisoner and a practicing psychiatrist or psychologist from the State Department of Mental Health have evaluated the prisoner at a facility of the Department of Corrections, and a chief psychiatrist of the Department of Corrections has certified" to the BPH that the individual meets the static and dynamic criteria set forth in section 2962. (§ 2962, subd. (d).) The subdivision also contains safeguards requiring further professional evaluation in the event that not all treating officials and mental health professionals agree that the dynamic and static criteria are present. (§ 2962, subd. (d)(2), (3).)

Section 2964 provides that an MDO must be notified in writing of his or her right to challenge the designation, and refers the individual to section 2966. Section 2966 sets forth the two-tiered process by which an individual may challenge his or her certification as an MDO—first by requesting a hearing before the BPH (§ 2962, subd. (a)), and then by petitioning the superior court for a hearing challenging that determination (§ 2962, subd. (b)). Once the initial one-year commitment period has passed, the time by which an MDO must have challenged the static criteria justifying that commitment has also passed.

 Section 2966, subdivision (c) and sections 2970 and 2972 support our conclusion. Section 2966, subdivision (c) explains that if the BPH continues mental health treatment under section 2962 when it continues parole pursuant to section 3001,[9] "the procedures of this section [(permitting an individual to challenge his or her MDO status by requesting a hearing before the BPH, and

---

[9] Section 3001 provides in pertinent part that when certain designated parolees "ha[ve] been released . . . from the state prison, and ha[ve] been on parole continuously for one year since release from confinement, . . . that person shall be discharged from parole, unless the Department of Corrections recommends to the [BPH] that the person be retained on parole and the board, for good cause, determines that the person will be retained." (§ 3001, subd. (a); see

by petitioning the superior court to challenge that determination)] shall only be applicable for the purpose of determining if the parolee has a severe mental disorder, whether the parolee's severe mental disorder is not in remission or cannot be kept in remission without treatment, and whether by reason of his or her severe mental disorder, the parolee represents a substantial danger of physical harm to others." (§ 2966, subd. (c).) That is, section 2966, subdivision (c) provides that, once an MDO's treatment is continued past the initial one-year period of parole, the MDO may request a hearing before the BPH only to challenge whether the dynamic commitment criteria are still satisfied.

 Sections 2970 and 2972 provide further support. These provisions address the process a district attorney utilizes when seeking continued commitment following the termination of an MDO's parole or release from prison. Prior to an MDO's release from parole or prison, a designated treatment provider or mental health professional must supply a local district attorney with an evaluation of the MDO's remission status. Should the individual continue to require treatment, a local district attorney may seek recommitment by filing a petition alleging that the dynamic criteria justifying commitment are present. (§ 2970.) If such a petition is filed, "the court shall conduct a hearing . . . for continued treatment." (§ 2972, subd. (a).) An individual has the right to representation at this hearing, and has the right to a jury trial and a unanimous verdict. (*Ibid.*) Section 2972, subdivision (c) provides that the court must find beyond a reasonable doubt "that the patient has a severe mental disorder, that the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment, and that by reason of his or her severe mental disorder, the patient represents a substantial danger of physical harm to others." Sections 2966, subdivision (c), section 2970, and section 2972, read individually and collectively, reveal that the Legislature intended an MDO to be permitted to challenge the static factors justifying his or her commitment only during the initial one-year period of treatment; once that period ends, the statutory language contemplates a challenge based only upon the dynamic factors justifying continued treatment.

Our conclusion is also bolstered by the fact that the Legislature referred to an MDO requiring treatment as a "person" or "patient" in section 2972, but referred to the MDO as a "prisoner" or "parolee" in sections 2960 through 2970. This linguistic shift suggests the Legislature acknowledged that the recommitment process outlined in section 2972 is distinct from the initial commitment process. Sections 2960 through 2970 refer to the committee as a "parolee" or a "prisoner," recognizing the MDO commitment process begins with an evaluation conducted during a prisoner's first year of incarceration to

---

also *id.*, subds. (b), (c) [providing the same parameters of release for parolees on continuous parole for three and six years, respectively].)

determine if he or she suffers from a severe mental illness. This examination effectuates the Legislature's goal "that severely mentally disordered prisoners should be provided with an appropriate level of mental health treatment while in prison and when returned to the community." (§ 2960.) As a condition of parole, should a parolee or prisoner meet the criteria outlined in section 2962, that individual will be designated an MDO. (§ 2962.) The next year, if parole is continued, so will be that individual's mental health treatment. (§ 2966, subd. (c).) Finally, once parole is discontinued, if an individual remains in need of mental health treatment, the MDO scheme contemplates an avenue for continued treatment. (§§ 2970, 2972.) The statutory scheme's delineation of the stages of treatment—at the inception of parole, at the extension of parole, and following termination of parole or release from prison—as well as the Legislature's use of different terms to refer to an MDO during and following parole, support our conclusion that the Legislature intended that the static commitment criteria could be challenged only during the initial commitment period.

Moreover, interpreting section 2966 to permit an individual to challenge the static commitment criteria at any time (rather than limiting that challenge to the initial one-year period of commitment) would render section 2966, subdivision (c) irrelevant. A reading of a statute rendering "some words surplusage is to be avoided." (*McCarther v. Pacific Telesis Group* (2010) 48 Cal.4th 104, 110 [105 Cal.Rptr.3d 404, 225 P.3d 538].) Section 2966, subdivision (c) makes plain, and sections 2970 and 2972 underscore, that once the initial one-year commitment period has passed, an MDO may challenge continued treatment only by alleging the dynamic criteria justifying commitment are not satisfied.

We are mindful of the significant liberty interests associated with involuntary civil commitment. (See *People v. McKee, supra,* 47 Cal.4th at p. 1206.) Our concerns that an MDO's rights be preserved are assuaged somewhat by the procedural safeguards imposed by the statutory scheme. In particular, we note that the scheme provides MDO's the right to counsel both when challenging certification before the BPH (Cal. Code Regs., tit. 15, § 2576, subd. (b)(4)), and when challenging the BPH's determination in superior court (§ 2966, subd. (b)). Indeed, section 2964 requires that, following MDO certification, the parolee be informed in writing that he or she may challenge the determination in court, which is necessarily accompanied by the right to counsel. Section 2966, subdivision (a) contains a similar safeguard, requiring that the parolee be informed at a requested BPH certification hearing that he or she may also challenge MDO certification in superior court, which challenge is necessarily accompanied by the right to representation.

Here, Lopez was represented by counsel during the October 2005 BPH certification hearing he requested and received. He was also represented by

counsel when he filed his petition pursuant to section 2966, subdivision (b), and when that petition was withdrawn "without prejudice."[10] Counsel's designation that such withdrawal was without prejudice, made without the court's approval and ostensibly based on no legal principle, may have been erroneous. Although Lopez may not challenge via section 2966, subdivision (b) the propriety of his MDO certification based upon the static commitment criteria, we express no view on whether he could challenge his certification by filing a petition for writ of habeas corpus.

## Conclusion

We affirm the judgment of the Court of Appeal.[11]

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Corrigan, J., concurred.

---

[10] We do not decide here whether the outcome would be the same had Lopez not been represented by counsel when he requested and received a hearing before the BPH pursuant to section 2966, subdivision (a), and when he submitted and withdrew his petition made pursuant to section 2966, subdivision (b).

[11] Because we conclude that the statutory scheme requires that a challenge to the static criteria be brought within the initial one-year commitment period, we need not and do not reach Lopez's additional arguments concerning forfeiture, res judicata, and collateral estoppel.