Filed 5/20/13  P. v. Schultz CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RYAN ANDREW SCHULTZ,<br><br>        Defendant and Appellant. | A134582<br><br>(Sonoma County<br>Super. Ct. No. SCR-585133) |

Defendant Ryan Andrew Schultz was charged under Health and Safety Code[1] section 11379.6 with manufacturing hash oil, a marijuana derivative, after his vehicle was found to contain cans of a chemical solvent and lengths of marijuana-filled pipe.  He contends he should have been prosecuted under section 11358, which prohibits the cultivation and processing of marijuana.  We affirm.

## I.  BACKGROUND

Defendant and two others were charged in an information, filed November 9, 2011, with manufacturing "hash oil" (§ 11379.6, subd. (a)), cultivating or processing marijuana (§ 11358), possessing marijuana for sale (§ 11359), and transporting marijuana (§ 11360, subd. (a)).  Prior to trial, the court dismissed all but the manufacturing charge.

The case was submitted for court trial on the basis of police reports and a declaration from an expert witness retained by the defense.  Defendant contested the

---

[1] All statutory references are to the Health and Safety Code unless otherwise indicated.

applicability to his conduct of section 11379.6, which prohibits the processing of controlled substances by "chemical extraction" or "chemical synthesis."

According to the police reports, defendant was seen driving away from his residence as the fire department arrived to extinguish a chemical fire. When police located defendant's vehicle, it was found to contain several cases of butane, lengths of PVC pipe covered with a honey-colored substance, some of which were filled with marijuana, and several pounds of marijuana. The honey-colored substance was later identified as "butane honey oil," a concentrated form of tetrahydrocannabinol (THC), the psychoactive component of marijuana. A police officer explained that butane honey oil is manufactured using tubes formed from PVC pipe with a cap on either end. The pipe is filled with marijuana, into which butane is injected and then drained. When the drained butane, which dissolves THC from the marijuana plant material, is evaporated, it leaves "hash oil," essentially a concentrated form of marijuana. The officer opined, based on his experience, that "the suspect(s) in this case were manufacturing Hash Oil, by means of a chemical extraction using Butane."

The defense expert, a research chemist with a Ph.D. in entomology, stated, "The term 'chemical extraction' is not generally accepted as a precise scientific term, and does not appear in the scientific dictionaries or other literature with which I am familiar." He confirmed that butane, as well as a number of other substances, is used to separate THC from marijuana plant material. When used in this manner, however, butane "act[s] to separate the THC from the vegetable matter without chemically modifying the THC." Accordingly, "the method can be fairly described as physically separating the THC from the vegetable matter," rather than chemical extraction. The expert also stated that, among scientists, "[t]he term 'chemical' is defined as any substance with a distinct molecular composition," including butane.

On this record, the trial court found defendant guilty, suspended imposition of sentence, and placed him on three years' probation.

## II.  DISCUSSION

Defendant contends his activities should have been prosecuted under section 11358, which prohibits the processing of marijuana, because section 11379.6 is a more general statute or, alternatively, does not apply to his conduct at all.  In evaluating this contention, we are not writing on a clean slate.  Defendant's arguments, as he acknowledges, were rejected in *People v. Bergen* (2008) 166 Cal.App.4th 161 (*Bergen*).  We review this legal issue de novo.  (*People v. Milstein* (2012) 211 Cal.App.4th 1158, 1164.)

Section 11379.6, subdivision (a), provides, "[E]very person who manufactures, compounds, converts, produces, derives, processes, or prepares, either directly or indirectly by chemical extraction or independently by means of chemical synthesis, any controlled substance specified in Section 11054, 11055, 11056, 11057, or 11058 shall be punished by imprisonment . . . ."  Section 11054 includes "marijuana" as a schedule I controlled substance (*id.,* subd. (d)(13)), and "marijuana" is defined to include "the resin extracted from any part of the plant" and "every compound, . . . derivative, mixture, or preparation of the plant, its seeds or resin" (§ 11018).  Under this definition, concentrated derivatives of marijuana, such as hash oil, are "controlled substances" for purposes of section 11379.6.[2]  Section 11358 states, "Every person who plants, cultivates, harvests, dries, or processes any marijuana or any part thereof, except as otherwise provided by law, shall be punished by imprisonment . . . ."  As a result, both statutes prohibit the "process[ing]" of marijuana, but section 11379.6 contains the additional requirement of processing "either directly or indirectly by chemical extraction or independently by

---

[2] Although THC is also a schedule I controlled substance under section 11054, the statute appears to refer only to chemically synthesized THC, rather than the substance as derived from natural sources.  (*Id.,* subd. (d)(20).)

means of chemical synthesis." The penalties for violation of section 11379.6 are more severe than for violation of section 11358.[3]

The activities of the defendant in *Bergen* were identical to those of defendant. Using PVC pipe and butane, he separated concentrated TCH from marijuana plant material. (*Bergen, supra,* 166 Cal.App.4th at p. 165.) Just as defendant does, the *Bergen* defendant argued he should have been charged under section 11358 because it more specifically described his criminal activities. (See *In re Williamson* (1954) 43 Cal.2d 651, 654 (*Williamson*) [where conduct is described by a more general and more specific statute, the specific statute is regarded as an exception to the more general statute].)

In rejecting the argument, *Bergen* began by observing section 11379.6 focuses on the particular processes used to produce controlled substances, specified as "chemical extraction" or "chemical synthesis," and punishes these particular means when they are used to process marijuana or other controlled substances. As a result, the court concluded section 11379.6 is a narrower statute than section 11358, which punishes any type of manufacture or processing of marijuana or concentrated THC. (*Bergen, supra,* 166 Cal.App.4th at p. 169.) The court then reviewed the legislative history of the statute, concluding the Legislature's concern in enacting the statute was to punish more severely the use of chemicals in the processing of controlled substances because this use posed dangers of its own, such as fire, environmental damage, and explosion. (*Bergen,* at pp. 170–172.) As the court noted, at the time section 11379.6 was enacted, section 11358 already made it a felony to cultivate or process marijuana. Section 11379.6 imposed a more severe penalty when this activity involved the use of chemical extraction or chemical synthesis. (*Bergen,* at pp. 170–171.)

Regarding the definition of "chemical extraction," the court noted the term had been defined in an opinion of the Attorney General as " 'the process of removing a particular component of a mixture from others present,' " using as an example the

---

[3] Section 11358 is punishable by imprisonment for 16 months, two years, or three years. (Pen. Code, § 1170, subd. (h)(1).) Section 11379.6 is punishable by imprisonment for three, five, or seven years. (*Id.*, subd. (a).)

extraction of THC from marijuana. (*Bergen, supra*, 166 Cal.App.4th at p. 170; 74 Ops.Cal.Atty.Gen. 70, 76 (1991).) *Bergen* noted this included the use of solvents to extract THC, covering precisely the criminal activities of the defendant. (*Id.* at pp. 172–173.)

Defendant appears to argue his activities did not constitute "chemical extraction" because, according to the defense expert, the scientific community would characterize this type of processing as "physical separation." In interpreting the meaning of the terms in section 11379.6, our concern is not what a scientist would make of the words but what the Legislature meant when it used them. In determining intent, we begin with the words themselves, giving them a commonsense meaning, and proceed to extrinsic materials only if necessary. Our objective is to " ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." ' " (*Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1063.) The definition adopted by *Bergen* is a reasonable interpretation of the plain meaning of the term "chemical extraction," and any doubt is resolved by the legislative history, which confirms this reading. It is immaterial that the scientific community might have chosen a different term.

Defendant next argues *Bergen* erred in finding section 11379.6 to be the more specific statute because all of the processing activities covered by 11358 are also covered by section 11379.6. The argument is premised on the observation of the defense expert that, when used as a noun, "chemical" refers to any pure molecular substance, not merely to the type of flammable or toxic substances envisioned by *Bergen*. Accordingly, he argues, any type of marijuana processing must be accomplished by means of a "chemical," making the two statutes coextensive on this score. Because section 11358 relates only to marijuana, defendant argues, it is the more specific.

Defendant's argument misses the fundamental difference between the two statutes. Section 11358 is focused on marijuana, prohibiting essentially any type of manipulation of the plant, including its cultivation and preparation for sale. Section 11379.6, in

5

contrast, is concerned only with a particular kind of activity in connection with controlled substances: their processing and synthesis using chemicals. It is this use of chemicals that defines the criminal activity covered by section 11379.6. (*Bergen, supra*, 166 Cal.App.4th at p. 169.)

We agree with *Bergen* that this focus on the means of processing makes section 11379.6 the narrower statute, as it concerns marijuana. In the manner discussed in *Williamson, supra,* 43 Cal.2d at page 654, section 11379.6 effectively creates an exception to section 11358 for such activity. The cultivation and processing of marijuana is punishable under section 11358, unless it involves the use of chemicals to extract or synthesize. In that case, it is punished under section 11379.6. As explained in *Bergen,* this exception, which carries a greater penalty, makes sense because the use of chemicals has its own risks beyond those of marijuana alone. The fact that most extraction activities using marijuana involve chemicals does not make section 11358 the more specific statute, since section 11358 covers a wide range of other marijuana activities in addition to such extraction.

Defendant also argues *Bergen* failed to consider the "preclusion doctrine," which prevents prosecution under a general statute when a more specific statute prohibits the same conduct and provides a lesser penalty. (*People v. Rackley* (1995) 33 Cal.App.4th 1659, 1665.) The preclusion doctrine is inapplicable here, since the more general statute, section 11358, provides a lighter penalty than the more specific statute.

Defendant further argues *Bergen*'s conclusion should be rejected because it would preclude the assertion of a medical use defense to the manufacture of THC using chemicals and "the baking of medically infused brownies." By its terms, the medical use defense applies only to violations of sections 11357 and 11358, providing a "limited immunity" from prosecution for cultivation and use of marijuana. (§ 11362.5, subd. (d); *People v. Mower* (2002) 28 Cal.4th 457, 469–470.) Because defendant cites no legal authority suggesting a medical use defense was intended for all activities involving

marijuana, we find no legal basis for disagreeing with *Bergen*'s holding on this ground.[4]
As discussed, section 11379.6 is an exception to section 11358, and this exception may
include the denial of a defense otherwise available if the offense had been charged under
section 11358.[5] (See *Bergen, supra,* 166 Cal.App.4th at p. 172, fn. 6.)

Finally, defendant argues *Bergen* was "incorrect" in its review of the legislative
history of section 11379.6. Defendant contends the statute was merely intended to "fix a
prior problem with a prior bill regarding PCP" and expand the definition of manufacture.
Whatever the original inspiration for the bill enacting section 11379.6, contemporary
committee reports demonstrate the statute was intended, as *Bergen* explains, " 'to deter
the operation of clandestine drug laboratories,' with another purpose of the bill being to
'create a separate offense of manufacturing <u>any</u> controlled substance.' " (*Bergen, supra*,
166 Cal.App.4th at p. 171, quoting Sen. Com. on Judiciary, com. on Assem. Bill No.
3165 (1983–1984 Reg. Sess.) p. 2.)

Contrary to defendant's claim, nothing in the legislative history suggests "the
Legislature's intent that § 11379.6 would not apply to the manufacture of hash oil,
concentrated cannabis, or any type of marijuana." Defendant's argument is based on the
failure of the legislative history specifically to mention marijuana derivatives. In
determining legislative intent, however, we reach extrinsic sources such as legislative
history only if the plain language of the statute is ambiguous. (*Lopez v. Superior Court,
supra,* 50 Cal.4th at p. 1063.) Given the clear reference in section 11379.6 to the statutes
governing schedule I controlled substances and the similarly unambiguous inclusion of
marijuana in schedule I, broadly defined by section 11018, the fact that the legislative
history does not specifically refer to marijuana or its derivatives is irrelevant to the
interpretation of the statute in this regard.

---

[4] We express no opinion regarding defendant's assertion that mixing marijuana
into baked goods is prohibited by section 11379.6.

[5] Subdivision (b)(2) of section 11362.5 expressly states that the medical use
defense is not intended "to supersede legislation prohibiting persons from engaging in
conduct that endangers others." As *Bergen* discussed, that is precisely the purpose of
section 11379.6.

## III.  DISPOSITION

The judgment of the trial court is affirmed.


_____
Margulies, Acting P.J.


We concur:


_____
Dondero, J.


_____
Banke, J.