Filed 10/29/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KERN, INYO & MONO COUNTIES PLUMBING, PIPEFITTER & REFRIGERATION/AIR CONDITIONING MECHANIC JOINT APPRENTICESHIP AND TRAINING COMMITTEE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>CALIFORNIA APPRENTICESHIP COUNCIL,<br><br>     Defendant and Respondent;<br><br>PLUMBING, HEATING AND COOLING CONTRACTORS OF THE GREATER SACRAMENTO AREA PLUMBERS UNILATERAL APPRENTICESHIP COMMITTEE,<br><br>     Real Party in Interest and Appellant. | A136680<br><br>(City and County of San Francisco Super. Ct. No. CPF-11-510995) |

Appellant and real party in interest Plumbing, Heating and Cooling Contractors of the Greater Sacramento Area Plumbers Unilateral Apprenticeship Committee (the Applicant Committee) provides a plumbing apprenticeship training program in 46 northern California counties. In 2007, the Applicant Committee sought and received approval from the Division of Apprenticeship Standards (DAS) to expand its apprenticeship program into Kern County. Respondent Kern, Inyo & Mono Counties Plumbing, Pipefitters & Refrigeration/Air Conditioning Mechanic Joint Apprenticeship and Training Committee (the Existing Committee), which already conducts a plumbing apprenticeship training program in Kern County, opposed the

1

expansion and appealed the approval to the California Apprenticeship Council (Council). After the Council denied the appeal, the Existing Committee initiated the present writ proceedings, successfully obtaining a writ of mandate in the trial court overturning the Council's decision.

On appeal, the Applicant Committee argues that the trial court erred in interpreting Labor Code[1] section 3075, subdivision (b)(3), which authorizes approval of a new apprenticeship program if "[e]xisting apprenticeship programs approved under this chapter that serve the same trade and geographic area have been identified by the California Apprenticeship Council as deficient in meeting their obligations under this chapter." We agree with the Applicant Committee that the trial court incorrectly concluded that an existing program must have been identified as deficient during an audit conducted pursuant to section 3073.1 before section 3075, subdivision (b)(3) authorizes approval of a new apprenticeship program. Although no interpretation of section 3075 can be perfectly squared with all of its terms, we conclude that under the construction most consistent with the language and apparent purpose of section 3075, subdivision (b)(3), the Council has authority to identify deficiencies in an existing committee's program during the process of reviewing an application for approval of a new apprenticeship and training program. Because substantial evidence supports the Council's finding that the Existing Committee's program was deficient based on its substandard graduation rates, its decision denying the Existing Committee's appeal from approval of the new program should not have been overturned. Accordingly, we shall reverse the order granting the writ of mandate.

## Background

### A. Legal Background

California regulates programs for the training of apprentices in the construction trades under the Shelley–Maloney Apprenticeship Labor Standards Act of 1939 (Act). (§ 3070 et seq.; *Southern California Cement Masons Joint Apprenticeship Committee v.*

_____

[1] All statutory references are to the Labor Code unless otherwise noted.

*California Apprenticeship Council* (2013) 213 Cal.App.4th 1531, 1535 (*Southern California Cement Masons JAC*).)[2] "Oversight of apprenticeship programs is vested in the Division of Apprenticeship Standards (DAS), one of five divisions within the Department of Industrial Relations (Department). [Citation.] The Council is a public body consisting largely of DAS officials and industry and trade union representatives appointed by the Governor. The Council's purpose is to 'aid[ ] the Director [of Industrial Relations] in formulating policies for the effective administration' of the laws governing apprenticeship, including through the formulation of regulations establishing standards for apprentice working conditions and assuring equal opportunities in apprenticeship programs. [Citations.] [¶] The Act encourages construction industry trade unions and employers to create programs to train and regulate the employment of apprentices. [Citations.] Such an apprenticeship program can apply for official approval by the DAS. [Citation.] Although DAS approval is not required for the operation of a program, 'strong financial incentives' and other advantages are available to approved programs." (*Southern California Cement Masons JAC, supra*, 213 Cal.App.4th at pp. 1535-1536, fns. omitted.)

Since 1984, section 3075 has provided: "An apprenticeship program . . . may be approved by the chief [of the DAS] in any trade in the state or in a city or trade area, whenever the apprentice training needs justify the establishment . . . ." (Stats. 1984, ch. 330, § 3; as amended by Stats. 1999, ch. 903, § 7.) Although, as recently observed by Division One of this court, the Act gives approved programs some protection from competition by other apprenticeship programs (*Southern California Cement Masons JAC, supra*, 213 Cal.App.4th at pp. 1536-1537), this protection is not as broad as it once was, nor is it as broad as the Existing Committee suggests. Under the Council's former

---

[2] For an explanation of the interrelationship between federal law, specifically the National Apprenticeship Act, commonly known as the Fitzgerald Act (29 U.S.C. § 50), and California law governing apprenticeship training, see *Southern Cal. Ch. of Associated Builders etc. Com. v. California Apprenticeship Council* (1992) 4 Cal.4th 422, 432-434.)

regulations, the DAS was prohibited from approving a new program that would adversely affect an existing program.[3] In *Southern Cal. Ch. of Associated Builders etc. Com. v. California Apprenticeship Council, supra,* 4 Cal.4th at pp. 450-453, our Supreme Court held that this regulation was not saved from federal preemption and therefore "the state may not demand that an apprenticeship program satisfy this state requirement in order to obtain Fitzgerald Act approval." (*Id.* at p. 453.) This provision therefore was removed from the regulations in 1995 (Register 95, No. 36 (Sept. 6, 1995)) and in 1999 a new subdivision was added to section 3075 to define the circumstances under which apprentice training needs may be deemed to justify the approval of a new apprenticeship program. (Stats. 1999, ch. 903, § 7.) Rather than avoiding adverse effects to existing programs, the focus is placed on the need for an additional program.

Under what is now subdivision (b) of section 3075, "the apprentice training needs in the building and construction trades shall be deemed to justify the approval of a new apprenticeship program only if" one or more of three conditions is satisfied. The three alternatives are: "(1) There is no existing apprenticeship program approved under this chapter serving the same craft or trade and geographic area. [¶] (2) Existing apprenticeship programs approved under this chapter that serve the same craft or trade and geographic area do not have the capacity, or neglect or refuse, to dispatch sufficient apprentices to qualified employers at a public works site who are willing to abide by the applicable apprenticeship standards. [¶] (3) Existing apprenticeship programs approved under this chapter that serve the same trade and geographic area have been identified by the California Apprenticeship Council as deficient in meeting their obligations under this chapter." (*Ibid*.)

---

[3] Title 8, section 212.2, subdivision (a) of the California Code of Regulations formerly provided: "The Chief DAS [Chief of the Division] shall consult with the sponsor, or sponsors, of the existing program or programs in the area when the apprenticeship standards submitted for approval would result in establishing a program where a similar program is already established and functioning or when it would affect an existing program or programs. Approval shall be denied when it is found that existing prevailing conditions (including the training standards) in the area and industry would in any way be lowered or adversely affected. . . ." (Register 86, No. 36 (Aug. 29. 1986).)

To obtain approval for a new apprenticeship program, a sponsoring committee must submit written program standards to the Chief of the DAS for approval. (Cal. Code Regs., tit. 8, § 212.2, subd. (a).) As part of the administrative review of the proposed program, the Chief is required serve a copy of the application on each existing program in the apprenticeable occupation in the same geographic area and these programs may submit comments on the application. (*Id.*, subd. (g).) In addition, the Chief may consult with the sponsors of any existing programs that could be affected by approval of the new program. (*Ibid.*) A decision by the Chief to approve or deny an application to establish a new apprenticeship program may be appealed to the Council by the applicant or any union or existing program that submitted comments to the proposed program. (*Id.*, subd. (k).) Appeals are initially referred to a three-member panel of the Council which provides a recommendation to the full Council. (*Id.*, subd. (l).) Thereafter, the Council may affirm, reverse or modify the decision of the Chief or the recommendation of the panel. (*Id.,* subd. (m).) The decision of the Council is final (*id.*, subd. (m)), subject only to judicial review by writ of mandate.

In the same legislation that added subdivision (b) to section 3075, section 3073.1 was added to the Act, calling for random audits of existing apprenticeship programs. (Stats. 1999, ch. 903, § 5.) Under this provision, an apprenticeship program is subject to random audit performed by the DAS to, among other things, "ensure that the program audited is complying with its standards" and "determine whether apprentices are graduating from the program on schedule or dropping out." (§ 3073.1, subd. (a).) If deficiencies are recognized in the audit, the DAS must prepare an audit report recommending remedial action to correct the deficiencies and a proposed timeline for doing so. (§ 3073.1, subd. (b); Cal. Code Regs., tit. 8, § 212.3, subd. (h).) The proposed audit report must be submitted to the program for comment and the DAS may reopen the audit in response to any comments. (Cal. Code Regs., tit. 8, § 212.3, subd. (f).) A final audit report, taking into account any comments by the program, must be submitted to the Council and made public. (§ 3073.1, subd. (b); Cal. Code Regs., tit. 8, § 212.3, subd. (f).) At each regular meeting of the Council, "[t]he Chief DAS shall report . . . the status of

5

each audit, including whether or not the deficiencies identified in the audit report have been corrected." (Cal. Code Regs., § 212.3, subd. (h).) The failure to correct deficiencies within a reasonable period of time shall be grounds for withdrawing state approval of a program. (§ 3073.1, subd. (b).)[4]

## B. Procedural History

In 2007 the Applicant Committee sought and, on June 21, 2007, received approval from the Chief to expand its apprenticeship program into Kern County. The Existing Committee timely appealed the approval to the Council. On December 15, 2010, following an extended and complicated procedural history in which two writs of mandate were granted, the Council issued the decision denying the appeal that is now before us.[5] In this decision, the Council finds that in the years 2002 through 2007, the graduation rate

---

[4] Although the initial audit is random, the DAS may "conduct[] more frequent or random audits of apprenticeship programs where deficiencies have been identified" and "shall give priority in conducting audits to programs that have been identified as having deficiencies." (§ 3073.1, subds. (b), (c).)

[5] Initially, both the Chief and the Council approved the Applicant Committee's program for expansion into Kern County based on subdivision (b)(2) of section 3075. The Existing Committee obtained a writ of mandate from the superior court overturning that approval on the ground that the Council had improperly interpreted subdivision (b)(2). On remand, the Council referred the matter to a three-member panel, which conducted an evidentiary hearing, concluded that there was no evidence to support a finding of need under subdivision (b)(2), and recommended that the Council grant the appeal. The Council voted to reject the recommendation and requested the Attorney General's office to prepare an order for adoption by the Council denying the appeal. The proposed order included findings of fact demonstrating a training need under both subdivisions (b)(2) and (b)(3). The Existing Committee objected to the inclusion of the finding under subdivision (b)(3), arguing that the Council had not reviewed the transcript of the evidentiary hearing and was in no position to make such a finding. After considerable discussion, the Council voted not to adopt the proposed order, approved a contrary motion to adopt the panel's recommendation, and an order was entered granting the appeal. The Applicant Committee challenged this order and obtained a writ of mandate directing the Council to set aside that decision on the ground that the Council had no authority to reconsider its prior decision denying the appeal. On remand, the Council adopted the proposed order initially presented by the Attorney General's office, including the factual finding under section 3075, subdivision (b)(3) that is at issue in the present appeal.

6

for apprentices in the Existing Committee's program was less than 30 percent, which is below the 55 percent graduation rate required by the plumbing industry's minimum training standards. The Council concluded that this "low graduation rate is deficient and therefore justifies a finding of a need for the [Applicant Committee's] expansion," citing section 3075, subdivision (b)(3).

The Existing Committee filed a petition for a writ of administrative mandate seeking to set aside the denial of its appeal. On July 24, 2012, the superior court granted the petition.The court ruled, among other things, that the Council "misinterpreted Section 3075(b)(3) by finding [the Existing Committee] 'deficient' and such finding is not supported by substantial evidence." The court explained, "The language of [Section 3075, subdivision (b)(3)] indicates that the [Council's] assertion that the graduation rates is a 'deficiency' is mistaken. The Section provides that the program(s) must 'have been identified' as deficient by the [Council]. The [Council] must have identified a program as deficient in meeting its obligations 'under this chapter,' i.e. Sections 3070 through 3099.5. [¶] Labor Code Section 3073.1 sets forth the manner in which apprenticeship programs are identified as 'deficient.' This is through an audit process. . . . [¶] Read together, Subsections 3073.1(c) and 3075(b)(3) make clear that the phrase 'identified . . . as deficient' in 3075(b)(3) is a term of art relating to a deficiency identified in an audit per 3073.1(c). Because there is no evidence that [the Existing Committee's program] had been identified as 'deficient' by the [Council] per Section 3073.1 at the time of the [d]ecision, the [Council's] . . . finding cannot stand."

The Applicant Committee timely filed a notice of appeal.

## Discussion

### A.      Standard of Review

When reviewing a decision issued by an administrative agency, the appellate court's "task . . . is the same as that of the trial court: that is, to review the agency's actions to determine whether the agency complied with procedures required by law." (*Al Larson Boat Shop, Inc. v. Board of Harbor Commissioners* (1993) 18 Cal.App.4th 729, 738.) "The appellate court reviews the administrative record independently; the trial

7

court's conclusions are not binding on it." (*Gentry v. City of Murrieta* (1995) 36 Cal.App.4th 1359, 1375-1376.)

## B. Administrative Mandamus Versus Traditional Mandamus

The parties devote considerable briefing to the question of whether review of the Council's decision is governed by Code of Civil Procedure section 1085, traditional mandamus, or section 1094.5, administrative mandamus. The complexity of this question was recently addressed in *Southern California Cement Masons JAC, supra,* 213 Cal.App.4th at p. 1541-1542: "Because the Council's decision falls between the statutory cracks of writ review, the choice between Code of Civil Procedure sections 1085 and 1094.5 is not straightforward. It is generally recognized that traditional mandamus under section 1085 applies to 'quasi-legislative' decisions, defined as those involving ' "the formulation of a rule to be applied to all future cases," ' while administrative mandamus under section 1094.5 applies to 'quasi-judicial' decisions, which involve ' " 'the actual application of such a rule to a specific set of existing facts.' " ' [Citation.] The decision to approve an apprenticeship program, based as it is on the application of [Labor Code] section 3075 and the DAS regulations to the particular circumstances of the relevant programs, is far more adjudicatory than legislative in nature, placing it in the natural domain of Code of Civil Procedure section 1094.5. Yet because the Chief and the Council are not *required* to hold a hearing before approving or denying approval of an apprenticeship program (see § 3075, subd. (a); Cal. Code Regs., tit. 8, § 212.2, subds. (h), (*l*)), their decisions do not fall within the literal language of that section, which applies only to decisions rendered 'as the result of a proceeding in which by law a hearing is required to be given[ and] evidence is required to be taken' (Code Civ. Proc., § 1094.5, subd. (a)). As a result, it is not readily apparent which statute should apply."

Having set forth the issue, the court concluded that it need not "resolve this dilemma because the standard of review applicable to the particular issues raised . . . is not dependent on the type of writ review." (*Southern California Cement Masons JAC, supra,* 213 Cal.App.4th at p. 1541.) The court explained, "Each of the Existing Committees' three arguments contends the Chief and Council erred in interpreting

8

section 3075. When reviewing an administrative agency's interpretation of a governing statute, including the type of informal interpretation embodied in the decision under review, we must 'independently judge the text of the statute, taking into account and respecting the agency's interpretation of its meaning.' " (*Ibid*., citing *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7.) The court recognized that "[b]ecause the Council's decision was the product of an agency with special expertise, operating in a complex area of commerce, the Council's interpretation deserves significant deference" although "the ' " 'ultimate responsibility for the construction of the statute' " ' is ours." (*Southern California Cement Masons JAC, supra,* at p. 1542.)

As in *Southern California Cement Masons JAC,* the dispositive issue on this appeal involves only the interpretation of section 3075, in this case the meaning of subdivision (b)(3). Thus, regardless of whether these proceedings are governed by section 1085 or 1094.5, we must " 'independently judge the text of the statute, taking into account and respecting the agency's interpretation of its meaning.' " (213 Cal.App.4th at p. 1541.)

C.  **Section 3075, subdivision (b)(3) does not require that the existing apprenticeship program be identified as deficient during a DAS audit before approval of a new apprenticeship program.**

The parties agree that under section 3075, subdivision (b)(3), an application for approval of a new apprenticeship program cannot be approved unless existing programs serving the same trade and geographic area "have been identified by the . . . Council as deficient in meeting their obligations under this chapter." (§ 3075, subd.(b)(3)). The Existing Committee contends that the Council may identify an existing program as deficient only if the Chief DAS has first made such a determination in an audit conducted pursuant to section 3073.1. The Applicant Committee contends that the Council may identify a deficiency in the first instance during the administrative proceeding in which the need for a new program is considered.

Initially, we note that neither interpretation can be fully reconciled with all provisions of the Act. Under section 3073.1, audits are conducted by the DAS. Audit

9

reports are "presented" to the Council, but there is no provision for the Council to ratify the results of the audit or to identify a program as deficient other than as specified in section 3075, subdivision (b)(3). (See § 3073.1; Cal. Code Regs. § 212.3.) Under section 3075, subdivision (a), applications for approval of a new apprenticeship program are made to and considered by the Chief DAS. The application comes before the Council only on appeal from the Chief's approval or denial of the application. (Cal. Code Regs., tit. 8, § 212.2.) Thus, the Chief DAS may approve an application under section 3075, subdivision (b)(3) only if the Council has identified a deficiency in existing programs, but the Council has no occasion to make such an identification until considering an appeal from the Chief's acceptance or rejection of an application for a new program. Read literally, therefore, a new program can virtually never be approved under section 3075, subdivision (b)(3) because the Chief DAS cannot rely on that provision unless the Council has identified a deficiency, and the Council cannot identify a deficiency unless an appeal is before it from a decision of the Chief DAS.[6] This dilemma exists whether the Council may identify a deficiency in the first instance, as argued by the Applicant Committee, or only following a section 3073.1 audit, as suggested by the Existing Committee. Clearly, corrective legislation is called for.[7]

---

[6] In the present case, the issue came before the Council following the unusual procedural history summarized in footnote 5, *ante.*

[7] As initially proposed, section 3075, subdivision (b)(3) read ". . . identified by the chief or the [Council]." (Assem. Bill No. 921, as amended July 7, 1999.) For reasons unknown, but likely the result of a clerical error, Assembly Bill No. 921 was amended so that subdivision (b)(3) read in relevant part "identified by the chief *of* the [Council]." (Assem. Bill No. 921, as amended Aug. 17, 1999.) A subsequent amendment struck "the chief of" from the proposed legislation, since there is no chief of the Council, resulting in subdivision (b)(3) as enacted. (Assem. Bill No. 921, as amended Sept. 3, 1999.) The legislative history offers no explanation for the above amendments, suggesting that the removal of the Chief from subdivision (b)(3) was simply an inadvertent drafting error. For the reasons discussed below, we need not rewrite the statute to resolve the present appeal. We note, however, that the inclusion of the Chief in subdivision (b)(3), as initially proposed, would resolve the dilemma identified above, and that the conclusion we reach is consistent with a revision of the statute permitting an identification of a deficiency to be made either by the Chief DAS or the Council.

The Existing Committee argues that section 3075, subdivision (b)(3) must be interpreted within the context of "the statutory scheme of which [it] is a part" (*Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1063), and that section 3073.1 "spells out how apprenticeship programs are indentified as 'deficient.' " It points out that the requirement in section 3075, subdivision (b)(3) that an existing program "have been identified" as deficient is stated in the past tense. Therefore, it asserts, the provision must be understood to mean that the existing program has previously been identified as deficient in an audit conducted pursuant to section 3073.1. Moreover, section 3073.1, subdivision (b) requires the DAS to "recommend remedial action to correct deficiencies recognized in the audit report, and the failure to correct deficiencies within a reasonable period of time shall be grounds for withdrawing state approval of a program."[8] Thus, the Existing Committee argues, "if an existing program has deficiencies that have been identified in an audit and that may render it at risk for withdrawal of state approval, this would create an apprenticeship training need in that trade and geographic area as described in [section 3075, subdivision (b)(3)]. [¶] This is the only construction of [section 3075, subdivision (b)(3)] that integrates the provision with 'the statutory scheme of which [it] is a part."

Although not implausible, the Existing Committee's interpretation cannot be squared with the plain language of section 3075, subdivision (b)(3). While, as the Existing Committee argues, that provision requires the deficiency in an existing program to "have been identified," the deficiency must "have been identified *by the California Apprenticeship Council*"—language that the Existing Committee ignores. There is no other point in the processes created by the Act at which the Council identifies a deficiency in an existing program than during its review of the Chief's decision to

---

[8] This is how the section read when the matter was before the Council. Among other amendments made to the statute in 2011, section 3073.1, subdivision (b) was amended to provide that "the failure *to follow division recommendations or* to correct deficiencies within a reasonable period of time shall be grounds for withdrawing state approval of a program." (Stats. 2011, ch. 696, § 1.)

11

approve or deny a new program application. Under section 3073.1 and the related regulations, the identification of deficiencies during the audit process is made by the DAS, not by the Council. While the Council receives the audit report, there is no provision for the Council to approve or ratify the content of the report. The only point at which the Act requires the Council to identify a deficiency in an existing program is as a predicate to approval of a new program under section 3075, subdivision (b)(3).

The word "deficiency" (or "deficient") is used throughout the Act in its ordinary sense, referring in some places to omissions or misstatements from program applications (§§ 3073.1, subd. (e); 3075.5) and in others to a failure to comply with program standards or to achieve program goals (§§ 3073.1, subds. (b), (c); 3075, subd. (b)(3)). There is no indication in the text or the history of the statute that the word is intended as a term of art meaning only a deficiency identified as such in a DAS audit.

To interpret the statute as suggested by the Existing Committee, the court would be required to read out of section 3075, subdivision (b)(3) the requirement that the deficiency be identified by the Council and replace it with another requirement, that the deficiency has been identified in a DAS audit. Sections 3075, subdivision (b) and 3073.1 were enacted at the same time. (Stats. 1999, ch. 903, §§ 5, 7.) Had the Legislature wanted to so restrict the manner in which deficiencies must be identified for purposes of section 3075, subdivision (b)(3), it would have been a simple matter to say so. Inserting into the statute the requirement that a deficiency in an existing program has been previously identified in a DAS audit before the Council may approve a new program because of that deficiency would be at odds with the most basic rules of statutory construction. (*People v. Guzman* (2005) 35 Cal.4th 577, 587 [Courts will only engage in rewriting of a statute " 'when it has been obvious that a word or number had been erroneously used or omitted' " and " 'when compelled by necessity and supported by firm evidence of the drafters' true intent.' "]; *Whaley v. Sony Computer Entertainment America, Inc.* (2004)

12

121 Cal.App.4th 479, 486 [Courts "may not 'insert qualifying provisions not included in the statute.' "].)

Interpreting the statute as it has been written gives appropriate deference to the Council's interpretation of its provisions. (*Yamaha Corp. of America v. State Bd. of Equalization, supra,* 19 Cal.4th 1.) And this interpretation is not at odds with the broader statutory scheme. The audit process defined in section 3073.1 is designed to ensure that existing apprenticeship programs comply with applicable rules and standards and to recommend remedial measures to correct deficiencies, leading to potential withdrawal of state approval if those deficiencies are not corrected within a reasonable period of time. The approval process defined in section 3075 is not designed to correct deficiencies in existing programs, to discipline existing programs, or revoke their right to operate. Permitting the Council to identify an existing deficiency allows the Council to address a deficiency promptly, without awaiting an audit report, and to do so by authorizing the operation of a new program without revoking the authorization of an existing program.

In this case, the Chief's decision includes the factual finding that the program sponsored by the Existing Committee had a five-year graduation rate of 23.8 percent. On appeal before the Council, the Existing Committee did not challenge this factual finding and the Council concluded that the substandard graduation rate was a deficiency within the meaning of section 3075, subdivision (b)(3). Because we conclude that section 3075, subdivision (b)(3) authorizes the Council to make such a finding without the deficiency having been previously identified in a DAS audit, and because the evidentiary support for the Council's finding is not questioned, it follows that the Council did not err in approving the Applicant Committee's program under section 3075, subdivision (b)(3). Hence, a writ of mandate should not have been granted compelling the Council to set aside its order denying the appeal from the approval of the Applicant Committee's program.

13

## Disposition

The order granting writ of mandate is reversed.

_____
Pollak, J.

We concur:

_____
McGuiness, P. J.

_____
Siggins, J.

Trial Court:                            San Francisco County Superior Court

Trial Judge:                           Hon. Harold E. Kahn

Counsel for Real Party in Interest
     and Appellant:                   Carrie E. Bushman,
                                    and
                                Grant R. Zehnder
                                    of Cook Brown

Counsel for Plaintiff and Respondent:     Jeffrey L. Cutler
                                    and
                                Elizabeth Rosenfeld
                                    of Wohlner Kaplon Phillips Young
                                    & Cutler

Counsel for Defendant and Respondent:    Karen Wing Yiu
                                    Office of the Attorney General