Filed 8/26/14

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058471 |
| v. | (Super.Ct.No. FELSS1204019) |
| J. S., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Steve Malone, Judge. Reversed with directions.

Ron Boyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and A. Natasha Cortina and Sean M. Rodriquez, Deputy Attorneys General, for Plaintiff and Respondent.

1

While imprisoned after being convicted of several offenses, defendant J.S. was declared a Mentally Disordered Offender (MDO) pursuant to Penal Code[1] section 2962. On March 6, 2012, J.S. was placed on parole and began her initial one-year term of involuntary treatment. After the Board of Parole Hearings (BPH) rejected her challenge to her MDO classification and initial commitment, she filed a petition requesting counsel and judicial review, pursuant to section 2966, subdivision (b). That petition, however, was not heard within the initial year of commitment. On April 3, 2013, the trial court granted the People's motion to dismiss the petition as "moot" on that basis.

Defendant contends that she is entitled to have her petition heard on the merits, because it was filed during the initial year of commitment, and even though the initial term is already completed, her petition is not moot. We agree, and therefore reverse the order dismissing defendant's petition.

## I. FACTS AND PROCEDURAL BACKGROUND

Defendant was convicted in San Bernardino County of first degree residential burglary (§ 459), criminal threats (§ 422), and attempting to carry a concealed dirk or dagger (§ 664, former § 12020, subd. (a)(4). After serving a prison term, but prior to being placed on parole, defendant was certified as an MDO. Upon being paroled with respect to these charges, effective March 6, 2012, she was released into the custody of Madera County on a warrant, pursuant to section 4755.

---

[1] Further undesignated statutory references are to the Penal Code.

2

On June 20, 2012, the BPH rejected defendant's challenge to her MDO classification. On September 6, 2012, defendant filed a petition requesting counsel and judicial review, pursuant to section 2966, subdivision (b).[2]

On September 21, 2012, the trial court appointed the public defender's office as counsel and set a status conference for November 2, 2012. The November 2 status conference was continued to December 7, 2012, at the request of defendant's counsel. At the December 7 status conference, the court scheduled a trial setting conference for January 4, 2013.

At the trial setting conference on January 4, 2013, counsel for defendant informed the court that defendant was being held in Madera County on suspicion of "a couple of felonies that occurred in state prison," and that the court in Madera County was considering whether she was competent to stand trial, pursuant to section 1370. Defense counsel was having difficulty reaching defendant, however; he had only been able to communicate with her by letter since she had been in custody in Madera County. Defense counsel pointed out that the end of defendant's initial commitment was approaching, and proposed a schedule for trial that would complete hearing of the matter prior to that time. The court adopted defense counsel's proposed timeline, setting a

---

[2] Defendant was represented by counsel at the BPH hearing, who apparently submitted by mail a petition for a hearing pursuant to section 2966, subdivision (b), on June 27, 2012. That petition, however, was not filed by the court, for reasons that do not appear in our record. In any case, the petition at issue in this appeal is the one filed on September 21, 2012.

pretrial conference for January 18, 2013, a trial readiness hearing for February 1, 2013, and a jury trial for February 4, 2013.

At the January 18, 2013, hearing, defense counsel waived defendant's presence.[3] On defendant's behalf, counsel also waived jury trial, and indicated he was prepared to proceed with a bench trial on February 14, 2013.  The court set a trial readiness hearing for February 8, 2013, and scheduled a bench trial for February 14, 2013.

At the trial readiness hearing on February 8, 2013, defense counsel informed the court that defendant was being held by Madera County "for a felony offense with a strike allegation," and that "[t]he judge had a doubt as to her competency."  The deputy district attorney represented that the court in Madera County "found [defendant] incompetent and she was referred to the hospital for treatment," and as a result, it would not be possible for defendant to be transported to attend the February 14, 2013, trial.  After some discussion of when a witness for the People would be available, the trial was rescheduled for March 4, 2013, with a trial readiness hearing set for March 1, 2013.  On February 22, 2013, the trial court issued an order that defendant be transported to attend the March 4, 2013, trial.

On March 1, 2013, defense counsel informed the court that the defense was ready for trial, except for difficulty in getting defendant transported to San Bernardino for the

---

[3]  Pursuant to a travel order by the trial court, dated January 9, 2013, defendant was apparently transported on January 17, 2013, to San Bernardino County's West Valley Detention Center, where defense counsel met with her on January 18, 2013.  But defendant was then sent back to Madera County, in violation of the trial court's order she remain in San Bernardino.

trial.  The deputy district attorney represented that she understood from someone at the San Bernardino County Sheriff's Department transportation division that the earliest defendant could be transported would be March 5, 2013.  The court proposed moving the trial to March 5, but a witness for the People was not available on that date; the deputy district attorney proposed starting the trial on March 4, 2013, in defendant's absence if necessary.  Defense counsel objected to proceeding in defendant's absence.  The court confirmed the March 4 trial date.

Despite the court's February 22, 2013, order, defendant was not transported to trial on March 4, 2013.  The court trailed the matter one day, even though there was no expectation that defendant would be transported by the next day either.

On March 5, 2013, defense counsel informed the court that after the hearing the previous day, he had been in contact with the transportation deputy for the San Bernardino County Sheriff's Department, and learned that Madera County was unwilling to transport defendant to San Bernardino until after a March 8, 2013, hearing.  The court continued the matter to the following day.

On March 6, 2013—the day defendant's initial one-year term of involuntary treatment ended—the People filed their "Motion to Dismiss Petition on Mootness Grounds."  Defendant's opposition was filed on March 21, 2013, and the People's reply was filed on March 28, 2013.  The court heard argument on the motion on April 3, 2013, and thereafter granted the motion and dismissed defendant's petition.

## II. DISCUSSION

### A. Background Regarding the Mentally Disordered Offender Act

"'The Mentally Disordered Offender Act (MDO Act), enacted in 1985, requires that offenders who have been convicted of violent crimes related to their mental disorders, and who continue to pose a danger to society, receive mental health treatment . . . until their mental disorder can be kept in remission. [Citation.]'" (*Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1061 (*Lopez*), disapproved on other grounds by *People v. Harrison* (2013) 57 Cal.4th 1211, 1230, fn. 2.)

"The MDO Act provides for treatment of certified MDO's at three stages of commitment: as a condition of parole, in conjunction with the extension of parole, and following release from parole. Section 2962 governs the first of the three commitment phases, setting forth the six criteria necessary to establish MDO status; these criteria must be present at the time of the State Department of Mental Health's and Department of Correction and Rehabilitation's determination that an offender, as a condition of parole, must be treated by the State Department of Mental Health." (*Lopez*, *supra*, 50 Cal.4th at pp. 1061-1062.)

Three of the six criteria to establish MDO status—that an offender suffers from a severe mental disorder, that the illness is not or cannot be kept in remission, and that the offender poses a risk of danger to others—are dynamic, in the sense of being "capable of change over time, and must be established at each annual review of the commitment." (*Lopez*, *supra*, 50 Cal.4th at p. 1062; see § 2962, subd. (a).) The other three—that the offender's severe mental disorder was a cause or aggravating factor in the commission of

6

the underlying crime, that the offender was treated for at least 90 days preceding his or her release, and that the underlying crime was a violent crime as enumerated in section 2962, subdivision (e)—"are considered 'static' or 'foundational' factors in that they 'concern past events that once established, are incapable of change.'" (*Lopez*, *supra*, at p. 1062.) "The practical effect of this distinction is that the three criteria concerning past events need only be proven once, while the BPT [(Board of Prison Terms)] must find that the parolee meets the other three criteria at the time of the annual hearing in order to continue treatment for an additional year." (*People v. Merfield* (2007) 147 Cal.App.4th 1071, 1075-1076.)

## B. Analysis

The Attorney General contends, and the trial court agreed, that any challenge to the initial determination that an offender qualifies as an MDO must not only be filed within the initial one-year term of involuntary treatment, but must also be heard within that year, or else the petition is properly dismissed as moot. We find no support for that conclusion, either in the text of the MDO Act itself or in case law applying it.

As the Attorney General concedes, section 2966, subdivision (b) "does not state on its face whether a defendant must fully litigate her petition challenging the Board's finding that she qualifies as an MDO during her initial year of commitment." To the contrary, the only statutory time limit with respect to the petition is placed on the court: "The court shall conduct a hearing on the petition within 60 calendar days after the petition is filed, unless either time is waived by the petitioner or his or her counsel, or good cause is shown." (§ 2966, subd. (b).) The absence of an explicit statutory time

7

limit is instructive; there is no reason the Legislature could not have included one, if it intended to require petitions challenging MDO determinations to be heard within a specific period.

Furthermore, as a general matter, an issue is moot if "any ruling by [the] court can have no practical impact or provide the parties effectual relief." (*Woodward Park Homeowners Assn. v. Garreks, Inc.* (2000) 77 Cal.App.4th 880, 888.) Even after the expiration of the initial commitment, however, the initial determination of whether an offender qualifies as an MDO continues to have practical effects. In some circumstances, an offender's involuntary treatment may be continued beyond the initial one-year term, either as a continued condition of parole, or after parole is terminated. (*Lopez*, *supra*, 50 Cal.4th at pp. 1062-1063.) Obviously, if an offender's initial commitment is improper, any extended commitment would also be improper. Moreover, to continue an offender's commitment, the People need only make a showing regarding the three section 2966 criteria that are capable of change over time, while it is assumed that the initial showing with respect to the static factors remains valid. (*Merfield*, *supra*, 147 Cal.App.4th at pp. 1075-1076; § 2966, subd. (c).) Thus, at least where the People seek to continue an offender's involuntary treatment beyond the initial one-year term, an offender's challenge to the validity of the initial determination that he or she qualifies as an MDO could have significant practical effects, and cannot be considered moot.

The Attorney General makes much of several decisions infelicitously referring to petitions pursuant to section 2966, subdivision (b), as being "rendered technically moot" by the expiration of the initial commitment period. (*Merfield*, *supra*, 147 Cal.App.4th at

8

p. 1075)  The *Merfield* court, however, like the cases it cites, acknowledges even where the initial commitment term is over, the initial certification an offender qualifies as an MDO has continuing ramifications where the offender is subject to recertification.  (*Ibid.*)  In other words, "technically moot" means, apparently, not moot at all, if by "moot" we mean having no further practical impact.

Indeed, setting aside loose language regarding purported "mootness," the reasoning in *Merfield* strongly supports the proposition that defendant's petition should not have been dismissed.  The offender in *Merfield* withdrew his petition challenging his initial commitment determination, and failed to file a new one during his initial commitment. (*Merfield*, *supra*, 147 Cal.App.4th at p. 1076.)  The court of appeal concluded that "An MDO . . . has but one opportunity to challenge the BPT's findings on the three criteria concerning past events.  The MDO may do so by petitioning for a hearing in the superior court of the county in which he is incarcerated on the BPT's initial commitment decision *before that commitment has expired*."  (*Ibid.*, original italics.)  Applying this rule to the case before it, the *Merfield* court upheld the dismissal of the offender's petition. (*Id.* at p. 1077.)  But applying this rule to the present case, the opposite result follows:  defendant's petition *was* filed before her initial commitment period expired.

Another case emphasized by the Attorney General, *Lopez*, *supra*, 50 Cal.4th at p. 1055, is similar to *Merfield*.  The defendant in *Lopez* timely filed a petition pursuant to section 2966, but withdrew it prior to being heard. (*Lopez*, *supra*, at p. 1060.)  He then attempted to raise issues regarding his initial commitment long after it had expired, and

9

after even the first renewal of that commitment, in response to a petition to extend his commitment for a second time. (*Ibid*.) The California Supreme Court considered whether "an MDO must challenge the static criteria justifying commitment during the initial one-year period of that commitment, or whether such a challenge may be brought at any time, even decades after the initial commitment has ended." (*Id.* at p. 1063.) The Court concluded that "the Legislature intended an MDO to be permitted to challenge the static factors justifying his or her commitment only during the initial one-year period of treatment . . . ." (*Id.* at p. 1065.) Applying that rule to the case before it, the Court concluded the defendant's petition was properly dismissed. (*Id.* at p. 1067.) Applying the same rule to the facts of this case, the opposite result follows: defendant did *bring* a challenge with respect to the static commitment factors during her initial year of commitment; it just was not heard during the initial commitment period.

Thus, neither *Merfield* nor *Lopez*, fairly read, stands for the proposition that an offender must not only bring a petition during the initial commitment period, but must also have that petition heard during the initial commitment period, on pain of being dismissed on grounds of mootness, or on any other grounds. Rather, the rule articulated and applied in *Merfield* and *Lopez* is that a petition filed after the initial commitment term has expired "is untimely and is subject to dismissal . . . ." [4] (*Merfield*, *supra*, 147

---

[4] Although *Merfield* says that the dismissal would be "on the ground of mootness," the court's reasoning is in substance an application of the doctrines of res judicata, collateral estoppel, and waiver. (*Merfield*, *supra*, 147 Cal.App.4th at pp. 1075-1076.) For the reasons discussed above, we disagree that the doctrine of mootness is applicable, and the facts that supported application of the doctrines of res judicata,

*[footnote continued on next page]*

Cal.App.4th at p. 1075.) The converse of that rule, however, also holds true: a petition filed before the initial commitment term expires—regardless of when it is heard—is timely and is not subject to dismissal on grounds of mootness, at least so long as the People seek to continue the offender's involuntary treatment.

Indeed, in *Merfield*, the court of appeal noted that trial courts regularly consider the merits of petitions filed during the initial commitment period, but which were not heard during that initial period "as the result of the delays inherent in the judicial process." (*Merfield*, *supra*, 147 Cal.App.4th at p. 1075.) Nevertheless, the Attorney General argues, and trial court found, that defendant's inability to appear for the hearing of her petition was "in part due to her own conduct and potentially violating the law while she was in the state hospital," so the failure to hear her petition before the end of her initial commitment was at least in part not a result of the "delays inherent in the judicial process."

Such reasoning is problematic in several respects. First, there is no evidence—either in our record, or before the trial court—that defendant was being held in Madera County "due to her own conduct." In essence, the trial court assumed the truth of the charges being leveled against her in another court, prior to and in the absence of any evidentiary hearing. Indeed, there was no *evidence* before the trial court even of the charges themselves, only attorney representations.

---

*[footnote continued from previous page]*

collateral estoppel, and waiver in *Merfield* and *Lopez* are distinguishable the facts of the present case.

11

Second, it is well established that delays in transporting prisoners to court are generally attributable to the People, and not the defendant. (*Jackson v. Superior Court* (1991) 230 Cal.App.3d 1391, 1394; see *Barker v. Wingo* (1972) 407 U.S. 514, 527 ["A defendant has no duty to bring himself to trial; the State has that duty . . . ." (fns. omitted.)].) We are aware of no authority limiting this general rule so as not to apply to offenders who are being held in custody by one county, but must attend proceedings in another. And there is no indication in our record that defendant voluntarily prevented her transportation, for example, by creating some disruption that made it impossible for her to be transported safely, or attempting to escape. (See *People v. Concepcion* (2008) 45 Cal.4th 77, 82 [right to presence at trial may be waived, inter alia, by disruptive behavior, or attempted escape].)

The Attorney General further suggests that defendant was dilatory in bringing her petition to trial, because of her delay in filing the petition after the BPH's decision, and further lack of "due diligence in preparing her case." However, the trial court made no finding that defendant's conduct with respect to bringing her petition or in litigating the matter was dilatory, implicitly rejecting the People's arguments to that effect in the motion to dismiss. Nor do we see any basis in the record for concluding defendant's preparation for trial was dilatory or otherwise improper. At no point prior to the motion to dismiss did the People ever object to defendant's proposals with respect to scheduling. Moreover, as detailed above, defendant was prepared for trial on the date set by the court; only the People's failure to bring defendant to the place of trial prevented the matter from being heard.

12

Finally, the Attorney General complains defendant would essentially get two bites of the proverbial apple if we were to rule in defendant's favor because section 2966, subdivision (c) allows an offender to challenge the three dynamic criteria at any recommitment hearing. This argument is without merit. Regarding both "static" and "dynamic" criteria, the issue with respect to an offender's initial commitment is whether the criteria are "present at the time of the State Department of Mental Health's and Department of Correction and Rehabilitation's determination that an offender, as a condition of parole, must be treated by the State Department of Mental Health." (*Lopez*, *supra*, 50 Cal.4th at p. 1062.) With respect to any recommitment hearings, the issue is whether "the parolee meets the [three dynamic criteria] at the time of the annual hearing in order to continue treatment for an additional year." (*Merfield*, *supra*, 147 Cal.App.4th at p. 1076.) In other words, the same criteria may be considered, but it is a different time period at issue, no matter when the review of the offender's initial commitment takes place. Two bites, perhaps, but not from the same apple.

In short, we conclude that a petition for judicial review pursuant to section 2966, subdivision (b), is timely filed if it is filed during the initial one-year commitment period. Further, if the initial commitment period expires before the timely filed petition is heard by the court, the petition is not rendered moot unless and until the offender's involuntary treatment is discontinued.

13

## III. DISPOSITION

The order granting the People's motion to dismiss is reversed.  The trial court is directed to issue an order denying the motion to dismiss, and to proceed with adjudicating defendant's petition on the merits.

CERTIFIED FOR PUBLICATION


                                                               HOLLENHORST

                                                                 Acting P. J.

We concur:

MCKINSTER

                      J.

CODRINGTON

                      J.