Filed 1/17/17

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D069515 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD206194) |
| MIC GOODRICH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County,

Eugenia A. Eyherabide and Kathleen M. Lewis, Judges.  Affirmed.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and

Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Joy Utomi, Allison V. Hawley and

Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

# INTRODUCTION

In 2014, the voters approved Proposition 47, adding section 1170.18 to the Penal Code[1] (The Safe Neighborhoods and Schools Act), and allowing qualifying felony offenders to seek reclassification of their offenses to misdemeanors, on a retroactive basis. (Pen. Code, § 1170.18, subd. (a).)

In 2015, Appellant Mic Goodrich filed a motion seeking reclassification of his underlying 2007 felony theft offense. The court granted the motion, which was unopposed. At the time Goodrich petitioned for and received reclassification of his felony offense, Goodrich was subject to a civil commitment in a state hospital as a mentally disordered offender (MDO). This commitment began in 2008 when Goodrich completed serving his prison sentence.

When the People petitioned again in 2015 to have Goodrich recommitted as an MDO, Goodrich opposed the petition on the ground that the felony conviction underlying his original commitment as an MDO had been redesignated as a misdemeanor, and that as a result, he no longer qualified for an MDO commitment. The trial court rejected Goodrich's argument and granted the People's petition to recommit him.

On appeal, Goodrich renews his argument that the redesignation of his original offense as a misdemeanor means that he no longer meets the criteria for an initial commitment as an MDO, and, therefore, he is entitled to be released from his

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

commitment. We disagree with Goodrich's contention and affirm the trial court's recommitment of Goodrich as an MDO.

II.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2007, Goodrich "swung at" a woman who was leaving a liquor store. The woman and her daughters got into their car and locked the doors. Goodrich hit the car window. He then picked up the woman's purse, which she had dropped while getting into her car, and absconded.

In July 2007, Goodrich pled guilty to grand theft, in violation of section 487, subdivision (c), a felony offense. The court sentenced Goodrich to 16 months in prison.

Goodrich completed his sentence, and on February 6, 2008, Goodrich was committed to a state hospital after having been determined to be an MDO, pursuant to section 2962. Goodrich has been recommitted as an MDO every year thereafter.

In November 2014, the voters approved Proposition 47, "the Safe Neighborhoods and Schools Act," which became effective on the day after its passage. (*People v. Bush* (2016) 245 Cal.App.4th 992, 1000, citing § 1170.18; Cal. Const., art. II, § 10, subd. (a).) Among other things, Proposition 47 added section 1170.18, which permits individuals to petition the trial court to redesignate certain felony offenses as misdemeanors.

Pursuant to section 1170.18, Goodrich filed a petition to have his felony theft conviction redesignated as a misdemeanor. The People did not oppose the motion. The trial court granted Goodrich's petition for redesignation of his offense on October 16, 2015.

3

In a separate proceeding, the People filed another petition to have Goodrich recommitted to a state hospital as an MDO for another year. Goodrich moved to dismiss the recommitment petition on the ground that the redesignation of his felony conviction as a misdemeanor conviction undermined a necessary precondition to his being committed as an MDO, i.e., that he had suffered a qualifying felony conviction for which he served a sentence in prison.

The trial court denied Goodrich's motion to dismiss the recommitment petition. The court concluded that Goodrich had been properly convicted of a felony and lawfully determined to be an MDO in 2008. After the court made this ruling, Goodrich submitted on the petition for recommitment, waiving his rights other than the right to appeal the trial court's ruling with respect to his motion to dismiss the petition.

III.

DISCUSSION

A. *Additional legal background*

1. *The Mentally Disordered Offender Act*

" 'The Mentally Disordered Offender Act (MDO Act), enacted in 1985, requires that offenders who have been convicted of violent crimes related to their mental disorders, and who continue to pose a danger to society, receive mental health treatment . . . until their mental disorder can be kept in remission. (Pen. Code, § 2960 et seq.)' [Citation.] The MDO Act is not penal or punitive, but is instead designed to 'protect the public' from offenders with severe mental illness and 'provide mental health treatment until the severe mental disorder which was one of the causes of or was an

4

aggravating factor in the person's prior criminal behavior is in remission and can be kept in remission.' (§ 2960.) The MDO Act has the dual purpose of protecting the public while treating severely mentally ill offenders." (*Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1061 (*Lopez*), disapproved on other grounds in *People v. Harrison* (2013) 57 Cal.4th 1211 (*Harrison*).)

The MDO Act provides for treatment of individuals determined to be MDOs at three stages of commitment: (1) as a condition of parole, (2) in conjunction with the extension of parole, and (3) following release from parole. (*Lopez*, *supra*, 50 Cal.4th at pp. 1061-1062.) Section 2962 governs the first of these three phases, setting forth six criteria necessary to establish an individual's MDO status. (*Lopez*, *supra*, at p. 1062.) All six criteria must be present at the time of the State Department of Mental Health's and Department of Correction and Rehabilitation's determination that an offender, as a condition of parole, is to be treated by the State Department of Mental Health. (*Ibid.*) "The initial MDO commitment is triggered by a certification by a chief psychiatrist of the Department of Corrections and Rehabilitation [(1)] that the prisoner has a severe mental disorder, [(2)] that the disorder is not in remission or cannot be kept in remission without treatment, [(3)] that the disorder was a cause of or an aggravating factor in an enumerated crime [(4)] for which the prisoner was sentenced to prison, [(5)] that the prisoner has been in treatment for the disorder for 90 days or more in the year preceding release on parole, and [(6)] that the prisoner represents a substantial danger of physical harm to others because of the disorder." (*Harrison*, *supra*, 57 Cal.4th at p. 1218, citing § 2962, subd. (d)(1).)

5

"Challenges to an MDO certification are governed by sections 2964 and 2966. Section 2964, subdivision (a) provides that '[a]ny prisoner who is to be required to accept treatment pursuant to Section 2962 shall be informed in writing of his or her right to request a hearing pursuant to Section 2966.' Section 2966, subdivisions (a) and (b) set forth the procedure by which an MDO may request a hearing to challenge the validity of the initial commitment. A prisoner who disagrees with the MDO certification decision may request a hearing before the Board 'for the purpose of proving that the prisoner meets the criteria in Section 2962.' (§ 2966, subd. (a); see § 5075, subd. (a) [all statutory references to the Board of Prison Terms now refer to the Board of Parole Hearings].) If the prisoner disagrees with the Board's determination that he or she 'meets the criteria of Section 2962,' the prisoner may file a petition for a hearing in the superior court 'on whether he or she, as of the date of the Board . . . hearing, met the criteria of Section 2962.' (§ 2966, subd. (b).) At the superior court hearing, the burden is on the People to establish the criteria of section 2962 beyond a reasonable doubt. (*Ibid.*)" (*Harrison*, *supra*, 57 Cal.4th at pp. 1218-1219.)

"Commitment as an MDO is not indefinite; instead, '[a]n MDO is committed for . . . one-year period[s] and thereafter has the right to be released unless the People prove beyond a reasonable doubt that he or she should be recommitted for another year.' " (*Lopez*, *supra*, 50 Cal.4th at p. 1063.) Thus, after an MDO's parole has been terminated, "[i]f continued treatment is sought, the district attorney must file a petition in the superior court alleging that the individual suffers from a severe mental disorder that is not in remission, and that he or she poses a substantial risk of harm. (§ 2970.)" (*Ibid.*) At the

6

hearing on the People's petition for recommitment of an MDO, "the three criteria that must be satisfied for continued treatment [i.e., recommitment] relate, not to the past, but to the defendant's current condition. At an extension proceeding, the questions are: Does the defendant continue to have a severe mental disorder? Is the disorder in remission? Does the defendant continue to represent a substantial danger of physical harm to others?" (*People v. Cobb* (2010) 48 Cal.4th 243, 252, citing § 2972, subd. (c).)

Thus, only three of the criteria outlined in section 2962 (i.e., that the offender suffers from a severe mental disorder, that the illness is not or cannot be kept in remission, and that the offender poses a risk of danger to others) have been described as factors that are capable of change over time, and their existence must be established at each annual review of the commitment. (*Lopez*, *supra*, 50 Cal.4th at p. 1062, citing §§ 2962, subd. (a), 2966, subd. (c), 2970, 2972.) The remaining three criteria have been described as " 'static' or 'foundational' factors in that they 'concern past events that once established, are incapable of change.' " (*Lopez*, *supra*, at p. 1062.)

2. *Proposition 47*

In November 2014, the voters enacted Proposition 47, the Safe Neighborhoods and Schools Act, which had the effect of reducing certain drug- and theft-related felony offenses to misdemeanors. "[T]he express intent of Proposition 47 is to 'reduce[ ] penalties for certain offenders convicted of nonserious and nonviolent property and drug crimes.' " (*People v. Acosta* (2015) 242 Cal.App.4th 521, 526 (*Acosta*), italics omitted.) A related purpose was " 'to ensure that prison spending is focused on violent and serious offenses, to maximize alternatives for nonserious, nonviolent crime, and to invest the

7

savings generated from this act into prevention and support programs.' " (*People v. Scarbrough* (2015) 240 Cal.App.4th 916, 928.)

Proposition 47 also created a new resentencing scheme for persons who are currently serving or who have fully served felony sentences for specified offenses made misdemeanors by the Act. (See § 1170.18, subds. (a) & (f).) Under subdivision (a) of section 1170.18, "[a] person . . . serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the [Act] had [the Act] been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing in accordance with" the various statutes that were amended or added by Proposition 47. (§ 1170.18, subd. (a).) Upon receiving such a petition, the trial court must determine whether the petitioner satisfies the criteria in subdivision (a) of section 1170.18. (*Id.*, subd. (b).) A person who satisfies the statutory criteria shall have his or her sentence recalled and is to be "resentenced to a misdemeanor . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (*Ibid.*)

Another provision of section 1170.18 provides that individuals who have completed felony sentences for offenses that would now be misdemeanors "may file an application before the trial court that entered the judgment of conviction in his or her case to have the felony conviction or convictions designated as misdemeanors." (*Id.*, subd. (f).) If the application satisfies the criteria in subdivision (f) of section 1170.18, "the court shall designate the felony offense or offenses as a misdemeanor." (*Id.*, subd. (g).)

8

Subdivision (k) of section 1170.18 provides that "[a]ny felony conviction that is recalled and resentenced under subdivision (b) or designated as a misdemeanor under subdivision (g) shall be considered a misdemeanor for all purposes, except that such resentencing shall not permit that person to own, possess, or have in his or her custody or control any firearm or prevent his or her conviction under Chapter 2 (commencing with Section 29800) of Division 9 of Title 4 of Part 6."

Section 1170.18 does not apply to persons with one or more prior convictions for "super strike" offenses or an offense requiring sex offender registration pursuant to section 290, subdivision (c). (§ 1170.18, subd. (i).)

B. *Application*

Goodrich argues that the trial court erred in denying his motion to dismiss the People's recommitment petition. According to Goodrich, MDO "commitments require an underlying felony, whereas appellant's commitment offense is now a misdemeanor." He contends that because section 1170.18, subdivision (k) specifies that the reduction of a felony offense to a misdemeanor is to be " 'for all purposes,' " Proposition 47 has effectively altered the felony on which his original commitment was based, and, therefore, he can no longer be recommitted as an MDO. As Goodrich states, "Nothing remains to justify a commitment, especially one imposed under a catchall provision for felonies involving violence or serious threats."

We disagree with Goodrich's analysis. At the time that Goodrich was initially committed as an MDO, his situation satisfied all six of the criteria allowing for an MDO commitment. Indeed, it was determined not only that Goodrich had a severe mental

9

disorder that was not in remission or could not be kept in remission without treatment, and that he represented a substantial danger of physical harm to others as a result of the disorder, but, also that the disorder was a cause of or aggravating factor in his commission of an offense for which he was sentenced to prison. Not only was Goodrich sentenced to prison, but he served his term, and had been in treatment for the disorder for 90 days or more preceding his scheduled release on parole. Thus, in 2008, when Goodrich was initially committed as an MDO pursuant to section 2962, he was determined to have met *all* of the requisite criteria; therefore, the record demonstrates that at the time Goodrich was initially committed as an MDO in 2008, he met the requisite factors for commitment.

Goodrich is presently seeking to prevent his further *recommitment* as an MDO. Recommitment is governed by sections 2970 and 2972. Section 2970 requires that the People file a petition with the trial court if the People seek the continued involuntary treatment of an MDO for an additional year. The People's petition must "be accompanied by affidavits specifying that treatment, while the prisoner was released from prison on parole, has been continuously provided by the State Department of State Hospitals either in a state hospital or in an outpatient program," and must "specify that the prisoner has a severe mental disorder, that the severe mental disorder is not in remission or cannot be kept in remission if the person's treatment is not continued, and that, by reason of his or her severe mental disorder, the prisoner represents a substantial danger of physical harm to others." (*Id.*, subd. (b).)

10

Pursuant to section 2972, subdivision (c), if, at the hearing on the People's petition made pursuant to section 2970, "the court or jury finds that the patient has a severe mental disorder, that the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment, and that by reason of his or her severe mental disorder, the patient represents a substantial danger of physical harm to others," the court must order the MDO to be recommitted.

As is clear from the statutory framework, there is no requirement that the People present evidence to establish the existence of the three "static" criteria (i.e., that mental disorder was a cause of or an aggravating factor in an enumerated crime; that the individual was sentenced to prison for the crime; and that the individual had been in treatment for the disorder for 90 days or more in the year preceding his or her release on parole) at a *recommitment* proceeding. Rather, once an individual has been determined to be an MDO and has been properly committed in an initial commitment proceeding, the only things that must be established in a recommitment proceeding are "that the patient has a severe mental disorder, that the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment, and that by reason of his or her severe mental disorder, the patient represents a substantial danger of physical harm to others." (§ 2972, subd. (c).) Thus, at Goodrich's recommitment proceeding, the court was not required to consider whether Goodrich had served a sentence for *any* offense. Goodrich's current commitment is not predicated upon his felony conviction; rather, it is predicated on his current mental state and dangerousness. His prior felony conviction is not a factor bearing on his current recommitment. It is undisputed that, at the time he was initially

11

committed as an MDO, he had suffered a felony conviction for which he served a sentence in prison and that the initial commitment was proper. Nothing about Proposition 47 changes this.

What Goodrich seeks is a retroactive collateral change to his *initial* commitment as an MDO as a result of having obtained relief pursuant to section 1170.18, subdivision (f). However, there is no indication that the voters, in passing Proposition 47, intended for its provisions to have the retroactive collateral consequence that Goodrich advances. To the contrary, the procedures set forth in section 1170.18 that must be followed to obtain the resentencing and reclassification benefits of Proposition 47 indicate that the electorate intended a specific, limited *prospective* application of the relief available under the new law. (See *People v. Shabazz* (2015) 237 Cal.App.4th 303, 313-314; see also *People v. Noyan* (2014) 232 Cal.App.4th 657, 672; *People v. Rivera* (2015) 233 Cal.App.4th 1085, 1100 [section 1170.18, subdivision (k), does not apply retroactively to change rules applied to determine appellate jurisdiction].)

The stated purpose of Proposition 47 is a further indication that voters did not intend for it to have the effect that Goodrich proposes. Specifically, "the express intent of Proposition 47 is to 'reduce[ ] penalties for certain offenders convicted of *nonserious and nonviolent* property and drug crimes.' " (*Acosta*, *supra*, 242 Cal.App.4th at p. 526, italics added, original italics omitted.) An MDO, however, is, by definition, a person who not only has a "severe mental disorder," but who has served a prison sentence as a result of committing a serious or violent offense punishable by prison (i.e., one of the statute's serious or violent enumerated offenses or any other felony offense that involved violence

12

or serious threats), and who continues to represent a "substantial danger of physical harm to others" because of the disorder. (§ 2962, subds. (d) & (e).) Proposition 47 was intended to reduce penalties for individuals who commit crimes that are *not serious or violent*, and, therefore, are not likely to pose a danger of physical harm to others. To apply Proposition 47 retroactively for the collateral purpose of invalidating an initial MDO commitment long after it was properly imposed would be at odds with the purpose intended by the voters.

## IV.

## DISPOSITION

The judgment is affirmed.

AARON, J.

WE CONCUR:

NARES, Acting P. J.

HALLER, J.