Filed 10/2/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>RALPH PIPKIN,<br><br>      Defendant and Appellant. | A148228<br><br>(Alameda County Super. Ct. No. 02052624) |

Ralph Pipkin (Pipkin or appellant) appeals from the trial court's order denying his motion to dismiss and recommitting him for treatment under the Mentally Disordered Offender Act (MDO Act) (Pen. Code, § 2960 et seq.)[1].  The sole issue before us is whether the challenged recommitment order was fatally flawed because the underlying felony offense supporting Pipkin's original commitment as a mentally disordered offender (MDO) has been reduced to a misdemeanor in accordance with Proposition 47.  However, Pipkin's MDO recommitment expired on October 13, 2016—while the instant appeal was pending—and the Alameda County District Attorney (District Attorney) declined to file a successive petition to extend it for an additional year.  Because Pipkin is no longer subject to involuntary civil commitment under the MDO Act, we dismiss this matter as moot.

## I.  BACKGROUND

In July 2011, Pipkin was sentenced to state prison for two years after his probation was revoked with respect to a 2009 felony grand theft conviction (§ 487).  The circumstances underlying this conviction are described in the record as follows:  "Mr.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

Pipkin grabbed a female victim's sweatshirt and stated 'give me your phone.' Mr. Pipkin then punched her in the mouth. A male witness attempted to intervene, and Mr. Pipkin punched the male victim in the jaw." As a condition of parole with respect to this qualifying offense, Pipkin was committed to Atascadero State Hospital on October 14, 2011, for treatment as an MDO in accordance with section 2962.[2] His parole period was scheduled to expire on October 13, 2014.

On June 6, 2014, prior to Pipkin's release from parole, the District Attorney filed a petition pursuant to section 2970 seeking Pipkin's continued commitment as an MDO for an additional year—from October 13, 2014, to October 13, 2015. On September 5, 2014, the petition was granted in accordance with a stipulation filed by appellant. Thereafter, on May 14, 2015, the District Attorney filed a recommitment petition for the one-year period beginning October 13, 2015. However, on August 10, 2015, Pipkin's above-described qualifying conviction for grand theft was reduced to a misdemeanor pursuant to Proposition 47.

As a consequence, on August 24, 2015, appellant filed a motion to dismiss the pending recommitment petition, arguing that further commitment as an MDO was not authorized given that his qualifying conviction must now—in accordance with Proposition 47—be treated as a misdemeanor "for all purposes." (§ 1170.18, subd. (k).) After further briefing and argument, the trial court, on March 4, 2016, denied Pipkin's motion to dismiss and granted the recommitment petition for the period ending October

---

[2] Pursuant to section 2962, the six criteria that must be proven to support an offender's initial designation as a MDO include the following: (1) that the offender suffers from a severe mental disorder; (2) that the disorder is not in remission or cannot be kept in remission without treatment; (3) that the offender poses a risk of danger to others; (4) that the offender's severe mental disorder was a cause or aggravating factor in the commission of the underlying crime; (5) that the offender was treated for at least 90 days preceding his or her release; and (6) that the underlying crime was a violent crime as enumerated in section 2962, subdivision (e). (See *Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1061–1062 (*Lopez*), disapproved on other grounds as stated in *People v. Harrison* (2013) 57 Cal.4th 1211, 1230, fn. 2 (*Harrison*); *Harrison, supra*, 57 Cal.4th at p. 1218, citing § 2962.)

2

13, 2016.  Pipkin timely filed a notice of appeal, challenging the trial court's determination.  After Pipkin's MDO commitment expired on October 13, 2016, no further petition for recommitment was filed.

## II.  DISCUSSION

As a general rule, " ' "the duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." ' " (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541.) Thus, an " 'action that originally was based on a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events.' " (*Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 866 (*Building a Better Redondo*); see also *Giles v. Horn* (2002) 100 Cal.App.4th 206, 226–227.)  Put another way, " '[a]n appeal should be dismissed as moot when the occurrence of events renders it impossible for the appellate court to grant appellant any effective relief.' " (*Brown v. California Unemployment Ins. Appeals Bd.* (2018) 20 Cal.App.5th 1107, 1116, fn. 6.)  In this case, Pipkin acknowledges that appellate courts generally decide only actual controversies.  He further concedes that this matter is "technically moot" because his involuntary MDO commitment expired in October 2016.

Nevertheless, appellant urges us to reach the merits of his challenge, arguing that it involves an important matter of public interest that is likely to recur, yet evade review. It is true that the general rule regarding mootness "is tempered by the court's discretionary authority to decide moot issues." (*Building a Better Redondo*, *supra*, 203 Cal.App.4th at p. 867.)  For instance, as appellant stresses, "[w]hen an action involves a matter of continuing public interest that is likely to recur, a court may exercise an inherent discretion to resolve that issue, even if an event occurring during the pendency of the appeal normally would render the matter moot." (*Ibid.*; see also *Bullis Charter School v. Los Altos School Dist.* (2011) 200 Cal.App.4th 1022, 1032–1035

3

[allocation of school district facilities to charter schools issue of broad public interest that is likely to recur because allocation process is an annual one; case not moot despite expiration of the school year]; *Gilb v. Chiang* (2010) 186 Cal.App.4th 444, 460 [a court "may exercise an inherent discretion" to resolve an otherwise moot matter if it involves a question of broad public interest].)  And, indeed, in the MDO context—where the duration of the civil commitment at issue is often shorter than the appellate process— courts have frequently exercised their discretion to decide technically moot questions on this basis.  (See, e.g., *Harrison*, *supra*, 57 Cal.4th at pp. 1217–1218 [scope of criteria that must be proved to trier of fact at hearing challenging initial MDO certification]; *People v. Dunley* (2016) 247 Cal.App.4th 1438, 1442–1443, 1445 [right not to testify at MDO recommitment proceeding]; *People v. Rish* (2008) 163 Cal.App.4th 1370, 1373, 1380–1381 [sua sponte duty of trial court in MDO proceeding to consider suitability for outpatient treatment]; *People v. Williams* (1999) 77 Cal.App.4th 436, 440 & 441, fn. 2 [failure to meet statutory deadlines for MDO trial].)

Undeniably, the issue raised by appellant in this case is an important legal matter that is of broad interest both to MDOs, specifically, and to the public in general. "Enacted in 1985, the MDO Act requires that an offender who has been convicted of a specified felony related to a severe mental disorder and who continues to pose a danger to society receive appropriate treatment until the disorder can be kept in remission. [Citation.]  'The MDO Act has the dual purpose of protecting the public while treating severely mentally ill offenders.' " (*Harrison*, *supra*, 57 Cal.4th at p. 1218.)  Moreover, our high court has repeatedly acknowledged the "significant liberty interests associated with involuntary civil commitment" such as that authorized by the MDO Act.  (*Lopez*, *supra*, 50 Cal.4th at p. 1066; see also *People v. Blackburn* (2015) 61 Cal.4th 1113, 1119.)

If, as Pipkin suggests, the redesignation of his qualifying offense as a misdemeanor means that he no longer met the criteria for continued MDO commitment, he was entitled to release.  In fact, a number of courts—including our Supreme Court— have concluded that the validity of a commitment or recommitment for mental health treatment depends on the validity of the underlying offense upon which that commitment

4

or recommitment was predicated. (See *In re Smith* (2008) 42 Cal.4th 1251 [civil commitment under Sexually Violent Predator Act not authorized after qualifying conviction reversed on appeal]; *In re Bevill* (1968) 68 Cal.2d 854 [recommitment as mentally disordered sex offender invalid where statute on which the qualifying conviction was based was subsequently declared unconstitutional]; *People v. J.S.* (2014) 229 Cal.App.4th 163, 170–171 [challenge to initial MDO commitment not moot despite expiration of initial commitment period because "[o]bviously, if an offender's initial commitment is improper, any extended commitment would also be improper"]; *People v. Crivello* (2011) 200 Cal.App.4th 612 [because appellant was never successfully committed as an MDO under section 2962, he could not properly be recommitted pursuant to section 2970]; *People v. Hayes* (2003) 105 Cal.App.4th 1287 [recommitment as MDO improper where underlying offense was not a qualifying crime under the MDO Act].) Of course, the distinguishing factor in all of these cases is that the initial commitment was found to be legally improper *from the outset*. Thus, it could not be viewed as supplying the requisite foundation for subsequent recommitments. Here, in contrast, no one disputes that Pipkin's initial MDO designation was legally sound at the time it occurred. Thus, the interesting question before us is whether later redesignation of a qualifying offense under Proposition 47 should be viewed as destroying the foundational facts necessary to support an MDO's current recommitment, even when that MDO's initial commitment was entirely proper.

As weighty as this issue is, however, it is impossible for us to conclude that it will evade review. In fact, the Fourth District recently addressed the exact question, concluding that the redesignation of a qualifying offense as a misdemeanor pursuant to Proposition 47 does not preclude recommitment as an MDO. (*People v. Goodrich* (2017) 7 Cal.App.5th 699, 705–706.) In reaching this decision, the *Goodrich* court relied on Supreme Court precedent characterizing the six criteria required for initial MDO certification pursuant to section 2962 as either " ' "static" ' " or "capable of change over time." (*Id.* at p. 708.) Specifically, the Supreme Court has held that all six of the section 2962 criteria "must be present at the time of the State Department of Mental

5

Health's and Department of Correction and Rehabilitation's determination that an offender, as a condition of parole, must be treated by the State Department of Mental Health. The first three criteria outlined in section 2962 are capable of change over time, and must be established at each annual review of the commitment. [Citations.] These criteria require proof that an offender suffers from a severe mental disorder, that the illness is not or cannot be kept in remission, and that the offender poses a risk of danger to others. [Citation.] The latter three criteria outlined in section 2962—that the offender's severe mental disorder was a cause or aggravating factor in the commission of the underlying crime, that the offender was treated for at least 90 days preceding his or her release, and that *the underlying crime was a violent crime as enumerated in section 2962, subdivision (e)*—are considered 'static' or 'foundational' factors in that they 'concern past events that once established, are incapable of change.' " (*Lopez*, *supra*, 50 Cal.4th at p. 1062, italics added.) Static factors need only be established at the time of the initial commitment proceeding. (*Id.* at pp. 1063–1064; *People v. Cobb* (2010) 48 Cal.4th 243, 252.)

Of course, in the wake of Proposition 47, the character of the underlying crime has proven to be significantly less immutable than was likely envisioned by our high court. Nevertheless, *Goodrich* relies on this distinction to support its determination that redesignation of a qualifying offense as a misdemeanor does not preclude later MDO recommitment. Specifically, the court reasoned that "there is no requirement that the People present evidence to establish the existence of the three 'static' criteria . . . at a *recommitment* proceeding. . . . Thus, at Goodrich's recommitment proceeding, the court was not required to consider whether Goodrich had served a sentence for *any* offense. Goodrich's current commitment is not predicated upon his felony conviction; rather, it is predicated on his current mental state and dangerousness. His prior felony conviction is not a factor bearing on his current recommitment. It is undisputed that, at the time he was initially committed as an MDO, he had suffered a felony conviction for which he served a sentence in prison and that the initial commitment was proper. Nothing about Proposition 47 changes this." (*Goodrich*, *supra*,

7 Cal.App.5th at pp. 710–711.)  The appellate court bolstered its analysis by characterizing Goodrich as seeking a "retroactive collateral change to his *initial* commitment as an MDO" and concluded that the electorate, in enacting Proposition 47, intended only limited, prospective relief, and then only for " ' "certain offenders convicted of *nonserious and nonviolent* property and drug crimes." ' " (*Id.* at p. 711.) Since an MDO, by definition, suffers from a severe mental disorder, was convicted of a qualifying serious or violent felony, and continues to represent a " 'substantial danger of physical harm to others,' " the *Goodrich* court opined that applying Proposition 47 "retroactively for the collateral purpose of invalidating an initial MDO commitment long after it was properly imposed would be at odds with the purpose intended by the voters." (*Ibid.*)

We do not find the issue to be as clear-cut as *Goodrich* suggests.  Even though the People need not establish the existence of the qualifying conviction at a recommitment proceeding, it does not necessarily follow that the validity of that recommitment is not still premised upon the continuing existence of the qualifying conviction.[3]  Moreover, while the electorate admittedly intended the remedies available under Proposition 47 to be limited to nonserious and nonviolent property and drug crimes, it is not immediately obvious how that same electorate would react upon learning that throwing some punches in pursuit of a cell phone (a crime now classified by that electorate as a misdemeanor) could subject an offender to indefinite civil commitment.  However, several unpublished decisions have since adopted the *Goodrich* analysis, and the Supreme Court has granted review in one such case on the precise issue currently before us.  (*People v. Foster,* review granted June 13, 2018, S248046.)  In our view, this knotty question—implicating, as it does, significant liberty interests and requiring the interpretation of statutes enacted by both the Legislature and the electorate, the appropriate harmonization of which is by

---

[3] In this regard, we note that the Supreme Court has recently concluded that the "misdemeanor for all purposes" provision in Proposition 47 "operates prospectively—by having ameliorative effect on any *new collateral consequence* imposed after a successful Proposition 47 resentencing." (*People v. Buycks* (2018) 5 Cal.5th 857, 876, italics added.)

no means clear—is eminently suitable for definitive resolution by our high court.  Given these circumstances, we can see no reason to add our voice to the debate when we can offer no meaningful relief in the case before us.

### III.  DISPOSITION

The appeal is dismissed as moot.

_____
REARDON, J.

We concur:


_____
STREETER, ACTING P. J.


_____
LEE, J.*


*Judge of the Superior Court of California, County of San Mateo, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

A148228 *People v. Pipkin*

9

Trial Court:                                    Alameda Superior Court


Trial Judge:                                    Hon. Vernon K. Nakahara


Counsel for Defendant and                       Brendon D. Woods
Appellant:                                      Public Defender
                                                Margo George
                                                Deputy Public Defender
                                                Michael S. McCormick
                                                Assistant Public Defender


Counsel for Plaintiff and Respondent:           Xavier Becerra
                                                Attorney General
                                                Gerald A. Engler
                                                Chief Assistant Attorney General
                                                Jeffrey M. Laurence
                                                Senior Assistant Attorney General
                                                René A. Chacòn
                                                Supervising Deputy Attorney General
                                                Nanette Winaker
                                                Deputy Attorney General

A148228 *People v. Pipkin*