Filed 8/20/21  Conservatorship of L.B. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| Conservatorship of the Person of L.B. | |
| PUBLIC GUARDIAN OF CONTRA COSTA COUNTY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>L.B.,<br><br>        Defendant and Appellant. | A160462<br><br>(Contra Costa County<br> Super. Ct. No. MSP19-00671) |

**INTRODUCTION**

In this conservatorship appeal, L.B. challenges the trial court's June 2020 order denying his motion to compel immediate placement in a treatment facility.  The Contra Costa Public Guardian (Public Guardian) was appointed as L.B.'s conservator in June 2019, at which time the trial court designated the most appropriate placement for him.  However, despite significant efforts by the Public Guardian to facilitate L.B.'s transfer to an appropriate facility, he remained in the county jail for over  a year.  While this extended delay in placement is certainly not optimal, L.B.'s conservatorship was terminated in August 2020.  We therefore dismiss this appeal as moot for the reasons discussed below.

1

## BACKGROUND

L.B. was charged with an October 2015 assault with intent to commit rape (Pen. Code, § 220, subd. (b)) and was found incompetent to stand trial by two evaluators under Penal Code section 1370. He was sent to Napa State Hospital (NSH) for competency restoration from June 2016 to January 2017, after which it was determined that his symptoms had been well-controlled by treatment and he had been restored to competency. Upon his return to the jail, however, defense counsel again declared a doubt as to L.B.'s competency and the evaluating professionals agreed. L.B. was returned to NSH for competency restoration from December 2017 to February 2018.

While at NSH, L.B. was diagnosed with schizoaffective disorder, bipolar type; antisocial behavior disorder; and pervasive development disorder due to his limited intellectual abilities. L.B. also had a number of substance use disorders involving amphetamines, cannabis, cocaine, alcohol, and opioids, which were in remission during his hospitalization. Although L.B. was again deemed restored to competency, his defense attorney continued to struggle to work with him. The trial court ultimately concluded that there was no substantial likelihood that L.B. would regain competence in the foreseeable future and a February 2019 order was issued to initiate a Murphy conservatorship proceedings for him.[1]

---

[1] In 1974, the conservatorship provisions of the Lanterman-Petris-Short (LPS) Act (Welf. & Inst. Code, § 5000 et seq.) were amended to provide an alternate definition of " 'gravely disabled' to include persons who have been found mentally incompetent and are charged with certain felonies,

On May 10, 2019, the Public Guardian filed a petition seeking appointment as conservator of the person of L.B. pursuant to the Murphy conservatorship provisions of the LPS Act. (Welf. & Inst. Code,[2] § 5008, subd. (h)(1)(B); *Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 176-177.) The petition alleged that L.B. was gravely disabled in that (1) a complaint, indictment, or information was pending against him which charged "a felony involving death, great bodily harm, or a serious threat to the physical well-being of another person"; (2) the charging document had not been dismissed after a finding of probable cause, a preliminary hearing, or a grand jury indictment; (3) as a result of a mental disorder, L.B. was unable to understand the nature and purpose of the proceedings against him and was unable to assist counsel in the conduct of his defense in a rational manner; and (4) L.B. represented a substantial danger of physical harm to others by reason of a mental disease, defect, or disorder. In accordance with section 5354, a comprehensive conservatorship investigation report was attached to the petition. In addition to appointment as L.B.'s conservator, the Public Guardian requested that the court impose two disabilities: a firearms/deadly weapon prohibition and an order that L.B. be denied the right to refuse treatment related to being gravely disabled, including psychotropic medications.

At a hearing on June 11, 2019, L.B. accepted the Murphy conservatorship and the trial court granted the petition. Specifically, the trial court found beyond a reasonable doubt that L.B. was gravely disabled as defined in section 5008, subdivision (h)(1)(B) and determined by clear and

---

thereby creating the ' "Murphy" conservatorship' named after the legislator who sponsored the bill." (*In re Taitano* (2017) 13 Cal.App.5th 233, 242.)

[2] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

convincing evidence that imposition of the two requested special disabilities was warranted. The court additionally found that, pursuant to section 5358, subdivision (c)(2), "first priority shall be placement in a facility that achieves the purposes of treatment of the conservatee and protection of the public" and concluded that the most appropriate placement for L.B. was NSH. Letters of Conservatorship were issued on July 5, 2019.

In August 2019, L.B.'s attorney filed a petition seeking the least restrictive placement for L.B. The court ordered evaluations of L.B. by the Public Guardian and California Psychiatric Transitions (CPT). After several continuances, the parties agreed to vacate the placement hearing and to modify L.B.'s placement to the level of a mental health rehabilitation center (MHRC)/institution for mental disease (IMD) if feasible, and if not, then a State Hospital. L.B. had been interviewed but was not accepted to CPT.

At a placement status review hearing on November 5, 2019, L.B.'s attorney advised the court that he was still requesting alternate placement. At the continued hearing on November 19, L.B. was awaiting transport to NSH, and his attorney requested that the matter be continued to December 10, 2019. As of December 10, however, L.B. was still waiting for placement, and a further continuance was granted to February 4, 2020. On February 4, L.B. remained in the jail and was reportedly number 84 on the waitlist for NSH. The matter was set for a court placement trial on March 24, 2020.

The March 24 hearing was continued to April 28, 2020, due to the court closure related to the COVID-19 pandemic. The parties then stipulated to a June 16 continuance, which was extended to June 23 so that L.B. could be transported to court. In the meantime, the Public Guardian had petitioned for reappointment as L.B.'s Murphy conservator on May 22, 2020, and the reappointment hearing was also continued to June 23. Prior to the June 23

4

hearing, L.B.'s attorney filed a motion to compel placement, requesting that the court order immediate placement of L.B. in any mental health treatment facility authorized by section 5358, subdivision (c)(2). According to the motion, failure to place L.B. violated both the LPS Act and L.B.'s constitutional rights to due process and equal protection.

At the hearing on June 23, 2020, L.B. objected to reappointment of the conservator and requested a jury trial, which was set for July 7.[3] With respect to the placement issue, L.B.'s attorney clarified that he was merely seeking to compel placement pursuant to the court's prior order. He argued that placement was mandated pursuant to the LPS Act and that making reasonable efforts was insufficient. He asked that the court order immediate placement in "some form of treatment facility," even if it was not "what the court feels is ideal." According to counsel for the Public Guardian, L.B. was currently number 61 on the NSH waitlist and the Public Guardian had been making diligent efforts to place him. The Public Guardian was limited to applying to those private MHRCs/IMDs that contract with the county, a number of which were not taking Murphy conservatees or had no open beds. Recently, Crestwood in Vallejo had stated it would take a referral but there were no guarantees that L.B. would be accepted. And the Public Guardian could not control NSH's admission process, which was based on psychiatric acuity.

The court agreed that treatment was a goal of the LPS Act, but also noted that protection of the public was equally important in a Murphy conservatorship. It concluded it did not have the power to do anything except order the Public Guardian to apply to all of the MHRCs/IMDs that were

---

[3] This trial date was subsequently continued several times to August 18, 2020.

currently under contract. The court additionally ordered the Public Guardian to determine if an individual could have more than one state hospital application pending at a time. L.B. filed a timely notice of appeal from the court's order.

While this appeal was pending, the Public Guardian filed a request for judicial notice, motion to dismiss, and motion to take additional evidence on February 22, 2021. Specifically, the Public Guardian asked that we take judicial notice of, and additional evidence with respect to, an August 18, 2020 order dismissing L.B's conservatorship based on his restoration to competence, arguing that this subsequent order rendered the current appeal moot. By order dated March 16, 2021, we granted the Public Guardian's unopposed request that we take judicial notice of the August 2020 dismissal order, denied the motion to take additional evidence as unnecessary, and deferred ruling on the motion to dismiss for consideration with the merits of the appeal. (Evid. Code, §§ 452, subd. (c)&(d), 459, subd. (a).) The parties have since completed their briefing, and the matter is now before us for decision.

## DISCUSSION

As a general rule, it is the duty of an appellate court " ' "to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." ' " (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541.) "A case is considered moot when 'the question addressed was at one time a live issue in the case,' but has been deprived of life 'because of events occurring after the judicial process was initiated.' " (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th

6

1559, 1574.) "The pivotal question in determining if a case is moot is therefore whether the court can grant the plaintiff any effectual relief." (*Ibid.*)

However, "the general rule regarding mootness 'is tempered by the court's discretionary authority to decide moot issues.' " (*People v. Pipkin* (2018) 27 Cal.App.5th 1146, 1150.) In particular, "if a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot." (*In re William M.* (1970) 3 Cal.3d 16, 23; see also *In re David B.* (2017) 12 Cal.App.5th 633, 654 [retaining a moot appeal may be appropriate where resolving the issue on the merits "will have some precedential consequence in future litigation generally"].) Appellate courts often reach the merits of moot issues in the conservatorship context because such issues might otherwise evade review. (See, e.g., *In re Loveton* (2016) 244 Cal.App.4th 1025, 1035; *K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 165; *Conservatorship of David L.* (2008) 164 Cal.App.4th 701, 709.)

Here, L.B. concedes that this case, which challenges the trial court's June 2020 order refusing to compel placement, is moot given that the trial court dismissed L.B.'s conservatorship in August 2020 based on his return to competency. He argues that we should nevertheless exercise our discretion to address his appeal because it raises issues of general public interest that are likely to evade review. On the merits, he argues that failure to transfer him to a designated placement violated the relevant placement statutes in the LPS Act, the legislative intent behind the creation of a Murphy conservatorship, and his due process rights. He requests a holding from this court that a Murphy conservatee must be transferred to the court's

7

designated placement within "a reasonable time" after the conservatorship is established.

Given the record before us, we decline to exercise our discretion to reach the merits of this appeal. We note that the relief L.B. now seeks—a broadly applicable declaration that all Murphy conservatees are entitled to placement within a "reasonable time"—was not raised in the trial court and we are thus without the benefit of the trial court's analysis of the issue. Moreover, we have not been provided with any evidence regarding how widespread or serious this problem may be and cannot determine on this record how a "reasonableness" directive might operate. It is also unclear the extent to which L.B.'s delay in placement was affected by the pandemic, making it difficult to generalize about the need for such relief outside of these unique circumstances. Finally, we are not convinced by the briefing provided that such a rule is either required or wise, especially given the serious public safety concerns underlying the creation of a Murphy conservatorship. In short, we decline to address an issue with such potentially far-reaching consequences in this case.

## DISPOSITION

The appeal is dismissed as moot.

_____

SANCHEZ, J.



We concur.



_____

HUMES,  P.J.



_____

MARGULIES, J.



(A160462)


9